Allen agt. Allen.

---

## SUPREME COURT.

Priscilla Allen agt. George W. Allen.

*Alimony and counsel fee allowed to wife in action against husband to annul marriage on ground of impotency.*

Alimony and counsel fee will be granted to the wife in an action against her husband for divorce to annul the marriage on the ground of his physical incapacity.

The case of *Bartlett* agt. *Bartlett* (*Clark's Chy. Reps., p.* 460) not followed.

*At Chambers, February,* 1880.

Motion by plaintiff for alimony pending the action, and for a counsel fee to prosecute the same.

The action was brought by Priscilla Allen against her husband, George W. Allen, for a divorce annulling the marriage contract upon the ground that he was physically incapable of entering into the marriage state.

The complaint alleged the marriage of the parties at the city of New York, on the 15th day of May, 1879, and residence in this state. It then alleged the defendant's physical incapacity of entering into the marriage state, and gave the facts thereof, which were known to him and unknown to her, and were intentionally and fraudulently concealed from her.

The complaint then demanded judgment that the said marriage be annulled and declared void.

The answer admitted the marriage and residence, and denied each and every other allegation.

The affidavit of the plaintiff, upon which the motion was made, stated that she is the wife of the defendant, and that she commenced the action to obtain a divorce from her marriage upon the ground of her husband's physical incapacity of entering into the marriage state, and for his fraud upon her in this respect; that she has lived and resided with said defendant, as his wife, for about three months at the residence of said defendant, at Hastings-on-the-Hudson; that she was obliged to submit to his ineffectual embraces until August 1, 1879, when she was compelled to leave him; that defendant had been brutal to her, injuring and hurting her body; he was gruff and unkind in his manner, all proceeding from his physical incapacity and anger, chagrin and suffering because he could not consummate the marriage with her. She then narrated several facts in proof of the above.

She further alleged that during the whole of their married life, he had only given her twenty-two dollars; never had bought her any clothing; never even paid her railroad fare, she was obliged to live on her own means, which were nearly gone; that she was in great need to pay the expenses of this suit and to prosecute the same; she had not hitherto made application for counsel fee, or alimony, because she thought she could finish the case with the little money she had, and as a matter of pride, but now she is compelled to do so, or else give up the suit and remain in her terrible situation.

The affidavit then alleged facts showing the means of the defendant to pay $250 counsel fee and seven dollars per week alimony. The affidavit further alleged, that the defendant claimed he would win the suit and that thus, the defendant showed, she would remain his wife, and he would have to support her, whether she lived with him or not, as she could not live with him in consequence of his brutality.

The affidavit of George F. Langbein stated that the defendant and his counsel were defending the action very closely,

and that expert medical witnesses would have to be called, which would be very expensive. It showed the proceedings in the cause thus far, and that the hon. Nathaniel Jarvis, Jr., had refused to dismiss the complaint, upon defendant's motion, when the plaintiff rested her testimony. It also appeared that there was a stenographer in the case and that a great deal of testimony had been taken at great expense.

That the defendant had opened his case and examined three physicians who had testified that the defendant was a perfect man.

The affidavit of the defendant admitted he was plaintiff's husband; he denied his physical incapacity, and any fraud upon the plaintiff; that he had been examined by three eminent and experienced physicians who pronounced him a perfect man and had so testified before the referee. That he had not paid his counsel anything, and whatever sum he was paid was advanced by a relative, not his father or mother; that he was a poor man and had no means, and no property of any value, earned his living by laboring in a quarry, in which he had no interest, and had given the plaintiff all his earnings.

"Deponent says that he has had sexual intercourse with plaintiff, and that she often refused to permit him to have intercourse with her; that he has said he would win this cause, and that it would be unjust to him to be compelled to furnish means to this plaintiff to fight him.

E. T. Lovatt, defendant's attorney, made an affidavit that from the evidence already in the case, it would be impossible for plaintiff to succeed, and otherwise corroborated defendant's affidavit.

*E. T. Lovatt*, for defendant, in opposition to the motion, insisted that the court cannot order an allowance for costs or alimony, in the wife's suit to declare a marriage null by reason of the husband's physical incapacity, and cited *Bartlett* agt. *Bartlett* (*Clarke*, 460).

*George F. Langbein*, for plaintiff, in support of the motion, argued, that he anticipated the point made; that it was an erroneous idea. Vice-chancellor WHITTELSEY once so decided, in a case where all his sympathies from the facts, were against the application. The decision has never been followed. Its reasoning was overthrown by chancellor WALWORTH in 1845, in a case where alimony and counsel fee were given the wife in an action for divorce on the ground of the nullity and illegality of the marriage. An examination of the law will show that the decision in *Bartlett* agt. *Bartlett* should not be followed.

Chapter 8 of the Revised Statutes (*Banks*, 6th ed., *p.* 147) treats of the domestic relations, and has four titles, the first is title 1, " of husband and wife." This title has seven articles, as follows :

Article 1. Of marriage and the solemnization and proof thereof.

Article 2. Of divorces, on the ground of the nullity of the marriage contract.

Article 3. Of divorces, dissolving the marriage contract.

Article 4. Of separations or limited divorces.

Article 5. General provisions applicable to the last two sections (*see p.* 147). It does not say "articles." (The two other articles of this chapter and title are not in point.)

Article 2, under which our cause of action comes, runs from section 35 to 50. It commences :

" Sec. 33. The supreme court may, by a sentence of nullity, declare void the marriage contract for either of the following causes existing at the time of the marriage : "

There are five subdivisions, the second is as follows :

" 2. That the former husband or wife of one of the parties was living, and that the marriage with such former husband or wife was then in force."

It will be seen that under this subdivision alimony and counsel fee have been repeatedly given.

Sub. 3 is : " That one of the parties was an idiot or lunatic."

Allen agt. Allen.

Sub. 4. That the consent of one of the parties was obtained by force or fraud.

Sub. 5. That one of the parties was physically incapable of entering into the married state.

Section 48 of this article reads as follows : " Suits to annul a marriage shall be by bill and shall be conducted in the same manner as other suits prosecuted in the courts of equity, and the court shall have the same power to award issues, to decree costs, and to enforce its decrees, as in other cases."

The last section of article fourth is section 70. Article fifth is headed " general provisions," &c., and commences with section 71, and reads as follows : " If a married woman at the time of exhibiting a bill against her husband under the provisions of the two last articles shall reside in this state, she shall be deemed an inhabitant thereof, although her husband may reside elsewhere."

It will be seen that this section expressly mentions, " under the provisions of the last two articles " and sections 72, 73 and 74, the rest of the articles of this section say nothing about it and clearly, and of necessity, must refer to all the foregoing articles about " divorces." The next section, 72, shows this, in connection with the former titles, and provisions of the former articles, it is as follows : " In every suit brought either for a divorce or for a separation the court may in its discretion require the husband to pay any sums necessary to enable the wife to carry on the suit during its pendency, and it may decree costs against either party, and award execution for the same or it may direct such costs to be paid out of any property sequestered or in the power of the court, or in the hands of the receiver."

Now the heading of article second under which this action is brought, is, of divorces on the ground of the nullity of the marriage contract. Thus it is seen that this action is an action for divorce, and comes right within section 72 of article fifth.

Section 73 does not repeat the language of section 71 to wit, : " under the provisions of the last two articles."

Sections 73 and 74, also contain many provisions for carrying out the practical provisions of article second. These two sections do not repeat the language of section 71.

If the provisions of article fifth did not apply to the preceding four articles, the court, strickly speaking, would often be powerless to carry out those provisions. Again, if sections 72, 73 and 74 of article 5 applies only to articles 3 and 4 where are the "general provisions" applicable to articles 1 and 2.

Besides, the glaring injustice of such a construction is so apparent, and such a construction is so much against all common sense and reason, that it is impossible that the revisers, in the days when a man married a lady he also married and took all her property, meant or intended any such thing.

Thus a lady would be *de facto* and *de jure* married (because she would be called a wife until a court of competent authority declared otherwise), the husband would have all her property and she would be penniless, and entirely unable to commence or prosecute such a difficult and expensive suit as a divorce on the ground of nullity, because of physical incapacity. She would be completely in the power of the husband and the law, and without any remedy.

The revisers never meant or intended that; they do not say so in section 72 of article 5, and it is not the true construction of the law.

There is only one case where a construction was erroneously made differently; that was the case of *Bartlett* agt. *Bartlett* (*Clarke's Chy. Reps.*, *p.* 460), decided February, 1841, by FREDERICK WHITTELSEY, vice chancellor. Only one volume was ever issued, and this volume is of reports of chancery cases in the eighth circuit of this state. In 1871 N. C. Moak, Esq., arranged a " new edition, with notes, and references to subsequent cases and authorities."

Although nearly all other cases in this volume have notes and reference to subsequent cases and authorities, this case has none. It contains no points, arguments or cases cited by

Allen agt. Allen.

counsel, which it was usual to do, and report in those days, and, certainly vice-chancellor WHITTELSEY is no authority to follow.

The facts in the case were, and the head-notes so show, that the wife went from the house of her husband to that of her father, and the father agreed with the husband, if he would make no claim for the value of his wife's services he, the father, would make no claim upon the husband for her support, and that she would not involve her husband in debt by any acts of her own. The vice-chancellor held the affidavits conclusive in favor of the husband. He held, that as the father was supporting the wife under this agreement, there was no necessity for calling upon the husband to contribute to this object, as the matter had been arranged between the father and the husband. He then goes on to say that in all cases he has examined, where alimony or counsel fees were given, were for divorces on the ground of adultery, or for a separation. He then says : "It will be remembered that the case before us is different. The object of the bill here is not for a divorce, or separation, but for a decree of nullity of the marriage on account of the impotency of the husband. Now the vice-chancellor fell into a great error here, as we have shown that every action to annul a marriage contract is for a divorce. Article second shows it, whereas the vice-chancellor thought only actions on the ground of adultery or for a separation were actions for divorce, and, therefore, actions "of divorce, on the ground of the nullity of the marriage contract," were not actions for divorce, and no alimony or counsel fees could be given. The statute expressly says they are actions for divorce ; in his opinion he says they are not, and upon this error and false and erroneous reasoning he made the decision he did, which has never been followed in any case. Again he says : " The bill in this case is filed neither for a divorce or separation under articles 3 or 4, but for annulling the marriage contract under article 2." We see how erroneous this opinion is ; the bill

was filed for a divorce to annul the marriage contract under article 2, to which all the sections of article 5 apply, except the first section which it expressly says is only applicable to articles 3 and 4 and not to article 2. All the way through his opinion he seems to think a suit to annul the marriage is not an action for divorce, but something separate and distinct by itself. Then he says that the legislature has given no express direction to the contrary, but that at least it is implied, that is, that he implies it, because he thinks such an action is not an action for a divorce, but solely to annul a marriage contract. He then goes on to reason about the matter. That in actions for cruelty or adultery the wife could not remain with her husband without danger to her personal security or violation of her purity of principle, *ergo*, in an action for impotency she could! And as he has all the property of the wife, unless he was made to contribute, the wife would be remediless under the most grievous wrong. (In an action for impotency, therefore, she would not!) He says: "This case is entirely different, and proceeds upon the ground that there never was any marriage in law, and asks the court to declare it null." The vice-chancellor is in great error there. The action does proceed upon the ground that there was a marriage, this is the very first paragraph in the complaint, and it proceeds upon the ground that it was legal, but asks the court to divorce it, to set it aside, to annul it, on the ground of the impotence and physical incapacity.

The rest of his remarks are hardly worth answering. He sees no reason why the woman cannot live safely with the man she has wedded. The impotency was the man's misfortune, not his fault. (In our case it was his fault, the effects of masturbation.) No error of temper or conduct in him; the wife could get some friend to aid her to procure the contract to be declared null. He can find no reason " at least in this stage of the suit, and no sympathy to stretch a doubtful authority, if there were any." In this language he ends this remarkable opinion. Now, in our case, there is every sympathy to stretch

a doubtful authority as Mr. Jarvis, the referee, can tell the court, and as the evidence shows.

The case of *North* agt. *North* (1 *Barb. Chy.*, *p.* 241), decided by chancellor WALWORTH in 1845, after this case of *Bartlett* agt. *Bartlett*, disposes entirely of the erroneous reasoning of vice-chancellor WHITTELSEY, and shows by authority, and decides that in an action under article 2 to annul a marriage contract, alimony and counsel fee can and is given by the court to the wife.

The chancellor says, at page 243, that where the marriage is admitted (as in our case) the presumption is that it was legal, until the contrary shall have been established by the proofs in the case. He says it is a mistake to suppose that the allowance for *ad interim* alimony, and for the expenses of the suit, is confined to cases in which both parties admit the original marriage to have been legal; that the practice is otherwise where the marriage is admitted as a fact, or is admitted that they were in fact married, but which marriage is alleged to have been illegal and void. In such a case she is entitled to alimony and counsel fees until the facts upon which the supposed illegality or invalidity of the marriage depends are decided to be true or false by the proofs.

Chancellor WALWORTH says, at page 244, that " by referring to the reviser's notes it will be seen that the allowance does not depend wholly upon the statute, but upon the practice of the court, as it previously existed" (*and see Brinkley* agt. *Brinkley*, 50 *N. Y.*, 184), wherein the court of appeals decided that the supreme court had inherent power to grant allowance for wife's support pending the suit. He then continues: " And even subsequently to that statute, this court has continued to allow *ad interim* alimony in matrimonial cases, in the same manner as before. *Ayliffe* says, a husband, regularly speaking, is bound to allow his wife alimony pending the suit, whatever the cause may be. *Poynter* also lays down the rule generally, that in all suits of divorce, or suits for the restitution of conjugal rights, or in suits of nullity, if the

nullity be promoted by the husband as soon as the court is judicially informed that a fact of marriage has taken place, it is competent for the wife to apply for alimony pending the suit (*See, also,* 1 *Ought Ordo Judic,* 306, *tit.* 206)." The learned chancellor then cites some cases where the wife received alimony and counsel fee in actions to annul the marriage contract, none of which it seems vice-chancellor WHITTELSEY could find.

As the supreme court, both before and since the Revised Statutes, makes equitable provisions, and in so doing has been guided by the decision of the ecclesiastical courts of England in similar cases (*Mix* agt. *Mix,* 1 *John. Ch.,* 110; *Denton* agt. *Denton,* 1 *John. Ch.,* 364; *Lewis* agt. *Lewis,* 3 *John. Ch.,* 519; *Wood* agt. *Wood,* 2 *Paige,* 114; *North* agt. *North,* 1 *Barb. Ch.,* 244), it is important to see what those decisions are.

Sir. ROBERT PHILLIMORE, in *Reynolds* agt. *Reynolds* (*Law J. Reps.* [*N. S.,*] *vol.* 45, *p.* 89), says: "A marriage sought to be set aside on the ground of impotence is not void, but voidable."

In *M.* agt. *C.* (41 *Law J.* [*N. S.,*] *p.* 40), lord PENZANCE made the wife pay to her husband the costs of her unsuccessful suit out of her separate income. It was a case of physical incapacity, and she failed to sustain the charges.

The rule is thus stated in *Shelford:* "After proof of a marriage in fact, alimony, pending the suit, will be allotted, whether it be commenced by or against the husband not only in cases of impotency, but in all cases of nullity of the marriage and in suits of restitution of conjugal rights, or for divorce by reason of adultery or cruelty" (*Shelford's Practical Treatise on Marriage and Divorce, Law Library* [*New Series*], *vol.* 17, *p.* 347 [587], *citing Bain* agt. *Bain,* 2 *Addams,* 253; *Smyth* agt. *Smyth,* 2 *Addams p.* 254; *Wilson* agt. *Wilson,* 2 *Hagg. Cons. R.,* 204; *Bird* agt. *Bird,* 1 *Lee,* 209).

*Shelford* (above) is cited in full and approved by the court in the case of *Frith* agt. *Frith* (18 *Geo. Reps.,* at *p.* 275),

Allen agt. Allen.

where, after extracting the above statement, the court says: "And this statement of the rule seems to be well supported by decided cases, I refer particularly to *Portsmouth* agt. *Portsmouth* (3 *Ad.*, 63) and *Bird* agt. *Bird* (1 *Lee*, 209). According to this last case this court, in *Roseberry* agt. *Roseberry*, went too far in permitting the husband to object to the payment of the alimony that the marriage, though a marriage *de facto* was not one *de jure.*"

*Roseberry* agt. *Roseberry* (17 *Geo. Reps.*, *p.* 139) was a suit by the wife to annul the marriage. She made application for alimony, the husband answered, that though married in fact the marriage was void in law; alimony was allowed. The general term reversed; the same court in *Frith* agt. *Frith* reversed this decision, thus holding that the wife could have alimony in her suit to annul the marriage. In *Bird* agt. *Bird* (*Lee's Ecc. Reps.*, *vol.* 1, *at pages* 210, 211), Dr. Hay, one of the counsel for the wife says: "It is sufficient for us to show a marriage *de facto;* if a woman brings a suit for impotency against her husband, she is to have alimony, and costs during the suit," and that is a much stronger case than this, for there the woman who prays the alimony and costs, affirms the marriage was null *ab initio*, whereas in this case the man affirms and the wife denies it (according to this there is such a rule in the English court, unless Dr. Hays has made a deliberate misstatement).

*Dr. Pinfold*, the opposing counsel, admitted that "to entitle to alimony and costs there must be a marriage proved and confessed." Sir GEORGE LEE, the judge said: "The man, by his suit, admitted that he was married to her *de facto*, and it was alleged, and not denied, that he had lived with her, as his wife, for many years," so in the wife's suit she admits the marriage and living with her husband.

*Phillimore* adds, in a note to this case, at page 211, "I apprehend that this decision, which seems to have been in a case *prima impressionis*, has descended to our times with the authority to which it is justly entitled. In all matrimonial

causes where a fact of marriage is established and the par-
ties have not separate incomes, the husband is liable, during
the progress of the cause, to pay for the maintenance of his
wife and the costs of the suit. But, in case of gross fraud, it
would, I presume, be competent for the judge to condemn the
asserted wife, in costs, at the termination of the suit.

In England there is what is called a " divorce act." By sec-
tion 53 of this act the ecclesiastical courts and divorce courts
are expressly authorized " to make rules and regulations con-
cerning the practice and procedure under this act." Under
that section Rule 159 has been made.

In *Jones* agt. *Jones* (before the full court, lords PENZANCE,
MILLER and BRETT), reported in volume 41, Law Journal,
page 53, at page 55, the judges say : " The fifty-third section
authorizes the court to make rules and regulations concerning
practice and procedure. But the right of the wife's solicitor
to the costs of the hearing is not a matter of practice but one
of principle. The effect of holding that the wife's costs are
in the discretion of the court will be to prevent her if she has
no separate estate from bringing her case to a hearing. No
proctor or solicitor would incur the responsibility of prosecut-
ing or defending a suit for a wife, if he is liable without fault
on his part to lose his costs. He must take his instructions
from the wife, and until the hearing he cannot know whether
her statement is correct." Lord PENZANCE also writes an opin-
ion explaining these rules ending, " the appeal, therefore, will
be dismissed, the wife have her costs as to the question of
alimony but not of the appeal itself.

*Browning on Marriage and Divorce,* as administered in the
court for divorce and matrimonial causes, &c., London, dedi-
cated to lord PENZANCE, contains the rules and regulations for
her majesty's court for divorce and matrimonial cause (*p.* 299)
made under the various statutes of Victoria. Rule 81 is as
follows : " The wife being a petitioner in a cause may file her
petition for alimony pending suit at any time after the cita-
tion has been duly served upon her husband, or after order

by the judge ordinary to dispense with such service, provided
the *factum* of marriage between the parties is established by
affidavit previously filed." At page 228 of this book, in a note,
is found the conclusive answer that the wife can have alimony
in a suit for impotency. By section 32 of the divorce act
upon any petition for dissolution of marriage the court has
the same power to make *ad interim* orders for payment of
money, by way of alimony or otherwise to the wife, as it
would in a suit instituted by judicial separation ; that she has
not answered a charge of adultery does not affect her right to
alimony for she is presumed to be innocent until proved
guilty. So, also, in a suit of nullity, for there is at least a *de
facto* marriage and until it is pronounced void she is presumed
to be a wife (*Bird alias Bell* agt. *Bird*, 1 *Lee*, 209 ; *Miles*
agt. *Chilton*, 1 *Roberts*, 684).

This court is vested, by implication, if it has not the express
power, with those equitable and incidental powers necessary
to grant the plaintiff equitable relief by giving her alimony
and counsel fees.

The court of chancery had, and the supreme court has,
general power to adjust remedies, and annex conditions to the
exercise of rights, and the redress of injuries (*Story's Eq.
Jur.*, secs. 27, 28).

In *Griffin* agt. *Griffin* (47 *N. Y.*, 135) alimony and
counsel fees were granted to the wife of an extraordinary
nature. The court said, page 136, " It is conceded that there
is no statute, in terms, authorizing the order, and that, if sus-
tained, it must rest upon the incidental powers formerly vested
in the court of chancery, in cases of this description, and to
which the supreme court has succeeded." Page 137 : " It has
been the constant practice of the court of chancery, both
before and since the Revised Statutes, to make equitable pro-
vision for all these matters, and in so doing it has been guided
by the decisions of the ecclesiastical court of England in
similar cases."

This was upon the ground of the general equitable juris-

diction of the court, and also that when our statutes did not confer jurisdiction upon the court of chancery in these actions for divorce, which by the English law are solely cognizable in the ecclesiastical courts, the grant of the jurisdic-diction carried with it by implication, the incidental powers which were indispensable to its proper exercise, and not in conflict with our statutory regulations on the same subject (*Perry* agt. *Perry*, 2 *Paige*, 504, 506; *Devenbagh* agt. *Devenbagh*, 5 *Paige*, 556; *Griffin* agt. *Griffin*, 47 *N. Y.*, *at page* 137).

In this state the power of the court is not alone confined to the statute as in the states of Vermont, Rhode Island, Massachusetts and North Carolina. Jurisdiction in cases of divorce was conferred here, not as a special and limited jurisdiction, granted to a common-law court, but it was granted to a chancery court, and the court in administering it has always called to its aid its own equity powers and the decisions of the ecclesiastical courts of England in like cases (*Griffin* agt. *Griffin*, *in* 47 *N. Y.*, *at pages* 137, 138).

The court has already seen what the decisions of the ecclesiastical courts of England, in like cases, are, that they have always granted alimony in all matrimonial cases. We have only to add an American author, *Bishop on Marriage and Divorce* (*vol.* 2, *sec.* 402), where he says, " The allowance cannot be made until a fact of marriage has either been admitted or proved. But the marriage need not be valid, for though void in law, if it has operated practically upon their property rights, like a valid marriage, the same reason exists for making the temporary provision." At page 403 he continues to say, "Even where the wife declares that the marriage was void, on principle, though undoubtedly she must be bound by her allegation, we saw in the last section that, even when the marriage is void, she should still have temporary alimony. *A fortiori*, when it is voidable, as for impotence, her allegation shows precisely the same foundation for alimony as if it were originally without defect, namely, that all her property has not only

practically but lawfully vested in the husband, and that he has become entitled to receive her earnings while he has received them in fact." Upon this page is a note. Mr. *Bishop* speaks of the decision in *Bartlett* agt. *Bartlett ;* he says : " The decision appears to have been based chiefly upon the statute, yet even in this view, there is certainly room to question its harmony with principles elsewhere established."

The plaintiff and the defendant are still husband and wife ; they call each other so ; the whole world calls them so ; the law looks upon them as such ; she had to submit to his impotent embraces as his wife, is she not entitled to receive support pending her action to dissolve or sever such an unnatural alliance into which she was deceived by the defendant ?

The pleadings admit the marriage, and in this case the wife comes into court and admits the marriage ; she, however, wishes to make it void to get rid of an admitted marriage ; to annul it, upon grounds she only discovered, and could only discover after the marriage.

Donohue, J. granted the motion and referred it to hon. Nathaniel Jarvis, Jr. (the referee already in the case, to try and determine the issues), to fix the amount.

An order was thereupon entered on the 21st day of January, 1880, referring it to Mr. Jarvis " to fix the amounts of such alimony and counsel fee, and that he report the amounts so fixed by him to this court forthwith."

On the 5th day of February, 1880, the referee reported and fixed the sum of $250 counsel fee, and five dollars per week alimony, which report was confirmed by the court.