(44 Misc. Rep. 323.)

## GORE v. GORE.

(Supreme Court, Special Term, St. Lawrence County. July, 1904.)

1. MARRIAGE—ANNULMENT—ALIMONY—ATTORNEY'S FEES.

    The court will allow a married woman counsel fees and expenses to carry on a suit to annul her marriage on the ground that the husband was incapacitated to contract the same, where it is shown on the motion that he knew of such fact, and admitted that he married her for the sole purpose of getting a housekeeper.

Action by Ella E. Gore against Franklin P. Gore to annul a marriage. Motion for alimony and counsel fees. Granted.

Kellogg & Mulligan, for plaintiff.
Conger, Orvis & McLear, for defendant.

JOHN M. KELLOGG, J. Plaintiff makes this motion for alimony and counsel fees in an action to annul the marriage between her and the defendant on the ground of his physical incapacity. The sharp conflict of authorities upon this question makes it somewhat interesting. The Special Term case of Allen v. Allen, 8 Abb. N. C. 175, decided January, 1880, by Donohue, J., and Anonymous, 15 Abb. Prac. (N. S.) 307, Judge Davis, at Special Term, in 1877: "From the argument and the consideration I have given them [the questions] with my brethren of the General Term," sustain the power of the court to grant the motion. Bartlett v. Bartlett, 1 Clarke, Ch. 460, decided by the vice

¶ 1. See Marriage, vol. 34, Cent. Dig. § 137.

chancellor in 1841; Meo v. Meo (Judge O'Brien, at New York Special Term in 1888) 2 N. Y. Supp. 569; Herron v. Herron, 28 Misc. Rep. 323, 59 N. Y. Supp. 861, decided by Judge Dunwell, July, 1899—held there is no authority for such a motion. The question has not been squarely decided by the Appellate Division or the Court of Appeals, and in view of this conflict of authority may well be considered an open one to be decided upon its merits, rather than by offsetting the decisions in the one direction against those in the other and determining which has the greater number or weight. While the question has not been free from doubt, and authorities have disagreed, it is now the settled law of this state that in actions to have the marriage declared null the court has the power to grant alimony and counsel fees, not from the provisions of the Code or the statutes, but from the inherent power and authority of a court of equity. Higgins v. Sharp, 164 N. Y. 4, 58 N. E. 9. The court says (at page 9, 164 N. Y., page 10, 58 N. E.):

"It seems to us, therefore, that actions to annul a marriage are governed, with respect to alimony and counsel fees, by the same principles as all other actions of divorce. When the court was vested with jurisdiction in such cases, the incidental power to guard and protect the rights of the wife, which had always been regarded as a part of the jurisdiction, necessarily followed and attached, upon the plainest principles of reason and justice."

The same principle was recognized in Griffin v. Griffin, 47 N. Y. 134, the court saying (at page 137):

"Yet it has been the constant practice of the court of chancery, both before and since the Revised Statutes, to make equitable provision for all these matters; and in so doing it has been guided by the decisions of the ecclesiastical courts of England in similar cases. * * * This has not been done upon the theory that the court of chancery of this state was vested with the jurisdiction of the ecclesiastical courts of England in matrimonial cases, or that (except in special cases hereafter referred to) it ever possessed any jurisdiction in cases of divorce other than that which was conferred by our own statutes; but upon the ground of the general equitable jurisdiction of the court, and also that when our statutes did confer jurisdiction upon the court of chancery in those actions for divorce which by the English law are solely cognizable in the ecclesiastical courts, the grant of that jurisdiction carried with it by implication the incidental powers which were indispensable to its proper exercise, and not in conflict with our own statutory regulations on the same subject."

It would seem that the above cases and the quotations from them would indicate that there ought to be no question of the power of a court of equity to compel a defendant in an action of this nature to furnish the necessary means for the conduct of the action and the support of the wife during its pendency, and it becomes interesting to see in what manner the authorities to the contrary arose, and upon what basis they rest. The position is more pronounced when we remember that the power to grant alimony in cases of annulment rests solely upon the inherent powers of the court and upon the practice in the ecclesiastical courts of England, which the courts of chancery are supposed to have borrowed, and when we see that in England in an action brought by the wife to have the marriage annulled upon the ground of the impotency of the husband the court uniformly grants alimony and suit money in the same manner in which our courts grant them in actions for divorce. Reynolds v. Reynolds, 45 L. J. (N. S.) 89; M. v. C., 41 L. J. (N. S.) 40. "After proof of marriage in fact,

alimony pending the suit will be allowed, whether it be commenced by or against the husband, not only in cases of impotency, but in all cases of nullity of the marriage, and in suits of restitution of conjugal rights, or for divorce by reason of adultery or cruelty." Shelf. Marr. & Div. 17 Law Lib. (N. S.) 347 (587), citing Bain v. Bain, 2 Add. 253; Smyth v. Smyth, Id. 254. The line of divergence arises in Bartlett v. Bartlett (decided by the vice chancellor in February, 1841) 1 Clarke Ch. 460. There the wife's father had agreed to support her and make no charge to the husband therefor, and she had left him, and was living with her father. The court assumes that at the time of the marriage the defendant was ignorant of the impotency, if it existed. The vice chancellor points out that there is no provision in the statute authorizing an allowance in cases to annul a marriage, and assumes that that impliedly shows that the Legislature did not intend that any such allowance should be made, and he says there is no precedent for it; that the woman can enlist some friend—assumably the father in that case—to procure the contract to be annulled; and he closes the opinion as follows:

"I can find no authority, precedent, or reason for compelling the husband to pay the expense of it, at least in this stage of the suit; and no sympathy, in this case, to stretch a doubtful authority, if there were any. The prayer of the petition is denied, with twelve dollars costs, to be paid by the next friend of the complainant."

But in 1845 the chancellor in North v. North, 1 Barb. Ch. 241, 43 Am. Dec. 778, held that, where the husband brought the action to annul the marriage upon the ground that the wife had a former husband living, alimony and counsel fee were allowable; but the court remarked that, where a wife files a bill in such a case, the allegations in her bill will be taken to be true as against herself when she applies for an allowance out of the husband's estate—evidently having in mind the Bartlett Case.

In Griffin v. Griffin, 47 N. Y. 134, decided in 1872, the husband was defeated in an action brought by him to have the marriage annulled upon the ground that the wife had a former husband living, and the court held an allowance in the judgment for counsel fees, expenses, etc., was proper, finding the authority in the inherent powers of the court, as before referred to. Judge Rappallo refers to the statute as to allowances in divorce cases, and says they are only allowed to the wife as plaintiff, and that it is very properly restricted to cases where the wife admits a valid marriage; that where she denies the existence of the marriage she cannot consistently claim that the defendant is under obligation to furnish her with means to carry on her suit against him—citing Bartlett v. Bartlett and North v. North, supra. These suggestions were not pertinent to the decision, and the question was not in any manner before the court. And we have already seen that the Bartlett Case, cited by him as authority, proceeded upon the theory that alimony could only be granted where authorized by statute, which has been held since not to be the law (Higgins v. Sharp, supra); and also held as a matter of discretion that no allowance should be made to the plaintiff, as the defendant was evidently acting in good faith, and the plaintiff was amply provided for. In fact, the decision in Griffin

v. Griffin is opposed to the law laid down in Bartlett v. Bartlett, for it squarely holds that the court in allowing alimony is not confined to the cases mentioned in the statute, but acts from its inherent equitable powers.

In Meo v. Meo (Sup.) 2 N. Y. Supp. 569, Judge O'Brien denies the wife's application for alimony, where she seeks to avoid the marriage on the ground of fraud, holding: First, that the case does not come within the provisions of the Code which grants alimony only in divorce cases; and, second, that under the Revised Statutes a distinction was drawn between actions brought by the wife and those brought against her to set aside the marriage contract, citing North v. North and Griffin v. Griffin, and quoting the language of Judge Rappallo in the latter case, hereinbefore referred to, and then says that the granting of such an allowance would be seemingly against the practice of the courts, citing Bloodgood v. Bloodgood, 59 How. Prac. 42, where Judge Daly, at a Special Term of the New York Common Pleas in 1880, followed Bartlett v. Bartlett, referring to Allen v. Allen as holding to the contrary, but says that it is against the cases in this state; and then Judge O'Brien refers in Meo v. Meo to Allen v. Allen and Anonymous, 15 Abb. Prac. (N. S.), above cited, but says that, considering that the Code makes no provision in these cases, taking the language of Griffin v. Griffin, and the fact that the Revised Statutes do not provide for such allowances, and that the weight of authorities in the state is seemingly the other way, he reluctantly denies the motion.

In Herron v. Herron, 28 Misc. Rep. 323, 59 N. Y. Supp. 861, the wife sought to avoid the marriage on the ground of her not having arrived at the age of legal consent. Justice Dunwell denied her application for alimony, citing Meo v. Meo, and saying that a review of the cases in that case showed that the weight of authority was against the application. But there, undoubtedly, the motion would have been denied as a matter of discretion, for the fact that the wife found herself a party to a voidable marriage was her own fault.

In Hopper v. Hopper, 92 Hun, 415, 36 N. Y. Supp. 610, where the husband brought the action on the ground that the wife had a former spouse living, which fact was conceded, the only question in litigation being the good faith of the plaintiff in making the marriage, it was properly held that the relation of husband and wife did not exist, and alimony was not allowed.

In Appleton v. Warner, 51 Barb. 270, the defendant wife was denied alimony because it was conceded by both her and her husband that the marriage was void because she had a former husband living.

The above cases are the particular decisions holding that alimony should not be granted in this class of cases, and it will be noted that they rest upon two foundations: (1) Bartlett v. Bartlett, which held that there was no authority to grant alimony in actions to annul a marriage, but the court had no sympathy with the plaintiff, and would not exercise a doubtful authority if it existed; and (2) the case of Griffin v. Griffin, which necessarily overrules Bartlett v. Bartlett, as it does grant suit money in an action brought by the husband to dissolve the marriage with the wife. So that all these cases, for their authority, rest upon a

case which has been overruled, and, in any event, rested solely in discretion, and the obiter dictum of Judge Rappallo in Griffin v. Griffin. This in face of the fact that the English courts are directly to the contrary, and that we have practically adopted their practice in these respects. It seems to me that Allen v. Allen and Anonymous, above cited, state the correct rule, and that the Court of Appeals in Higgins v. Sharp, 164 N. Y. 4, 58 N. E. 9, laying down the broad proposition, which is the English rule upon the subject, which we are supposed to have adopted, "that actions to annul a marriage are governed with respect to alimony and counsel fees by the same principle as all other actions for divorce," has deprived the cases holding that there is no power in this class of cases of any authority they may have had before that time. It will be observed the Court of Appeals adopt, in substance, the expression of Davis, J., in Anonymous, above, and use an expression equally strong with that found in Shelford, supra. As a matter of principle, the power ought to exist. The marriage is not void, but there is for all legal intents and purposes a legal marriage. Until set aside, the wife might maintain proceedings to compel the husband to support her. He could be arrested as a disorderly person for refusing to support her. She has the right to pledge his credit for her necessary support and maintenance. He has the right to her domestic services and to her earnings, except so far as the statutes relating to married women have created an exception. Each would share in the estate of the other under the statute of distribution, and she, surviving, would have dower in his land; and in the law to all intents and purposes he stands as her husband and she his wife, and that relation cannot be changed until a decree of a court sets it aside. He could not defend in any proceedings brought against him as husband upon the theory that the marriage was void for the reason alleged, and neither could she so long as the marriage is not annulled. The plaintiff claims that the defendant knowingly and fraudulently contracted this marriage with an intent not to get a wife, but simply a housekeeper, and that he had full knowledge of his condition before the marriage. She must go through life burdened with this marriage unless the court relieves her. If she has no money, she is unable to prosecute the action. We therefore have the anomalous position: she is unable to prosecute the action to annul the marriage for want of means. The law will not compel the husband to furnish her means to prosecute it, because she is not his wife. Therefore she must continue to be his wife. It is wrong to say, as some of the cases do, that the courts take her at her word, saying there is no marriage, because she begins the action by admitting that there was a marriage solemnized according to law, but claims that for certain reasons the marriage, as a matter of right and of justice to the public, ought not to stand. When she comes into court saying that a ceremonial marriage was performed, and seeks to avoid it on account of the husband's fraud upon her with reference to his capacity to enter into the contract, it seems a quibble of words to say that she comes into court admitting that there was no marriage, and therefore the court cannot, in that action, treat her in any respect as a wife. She comes into court as the wife, claiming to be such, but asks to be relieved of the position on account of the defendant's fraud

perpetrated upon her. In Starkweather v. Starkweather, 29 Hun, 488, the husband sought an absolute divorce upon the ground of the adultery of the wife with one Thomas F. Morford. The wife answered, saying that she had obtained a divorce against the plaintiff, and after the divorce had married Morford, and was now his wife. She applied for alimony and suit money, and the Special Term denied it upon the ground that she was denying the marriage relation, and therefore was not entitled to any rights as wife. The General Term reversed the holding, saying that the court had power to grant the motion, and that the motion rested in its sound discretion. In that case, concededly, according to her theory, she was not the wife of the plaintiff. He was not obliged to support her or contribute at all to her necessities. In this case she is the wife, and the defendant is responsible for her support and maintenance, and, if he has committed a fraud upon her by inducing her to enter into the marriage state when he could not make such a contract, it is a necessity for her to have the marriage set aside, and the necessary funds to prosecute the action are as much necessary for her as her clothing or maintenance, which he is clearly liable for until such marriage is set aside. It is a peculiar position that he can resist her motion to annul the marriage, as he does in this case, by denying the incapacity, and insist that she is his wife, and at the same time defeat her motion for alimony and counsel fees because she is not his wife. It is not necessary to say that the former cases cited proceed upon the sole theory of a want of power. They simply deny the motions because the practice is the other way. But this case contains things that none of the other cases contained. As we have seen, in the Bartlett Case the discretion of the judge was influenced by the idea that the defendant believed he was capable of entering into the contract when he entered into it. The moving papers in this case show that the husband had previously married, that he knew his incapacity, and boldly admitted that he entered into the marriage for the sole purpose of getting a housekeeper, and not a wife. So, as a matter of discretion, the distinction here is so broad that counsel fees may well be allowed in this case, although denied in the other cases where there was a possibility of an innocent mistake. So that the granting of alimony in this case is not necessarily a refusal to follow the Special Term cases above referred to. But if they proceed upon a want of power, then it seems proper to refuse to follow them. Here the wife is seeking to get rid of the marriage relation. She, in effect, renounces in advance any claim that she has upon the defendant for her support and maintenance in the future, and, if she succeeds in her action, the marriage is at an end, and her claim for support is at an end. It may not be unfair, considering that she has left her husband, and seeks to go out into the world to support herself, to let that support begin now, and to deny as matter of discretion the application for alimony; but it is necessary for her to have funds to prosecute the action. She has no available resources sufficient to support herself and carry on this action. The expense will be quite large. A physical examination by two physicians has already been ordered. The husband, having fraudulently induced her to enter into the marriage relation, should furnish her the necessary funds to prosecute the case, so that, if she has been

defrauded by him, she may have such relief as the law allows. An allowance is therefore made to the plaintiff of $300 for counsel fees and expenses to enable her to carry on and maintain the action. The court cannot decide this case upon affidavits. It cannot say she will not succeed. She makes a prima facie case sufficient to authorize this application to the court in her behalf. No costs of motion are allowed.

Ordered accordingly.