ELLA E. GORE, Respondent, *v.* FRANKLIN P. GORE, Appellant.

*Counsel fee and expenses — they may be granted to the wife in an action to annul the marriage on the ground of impotency — in such case the marriage is not void* ab initio *— it is otherwise where one of the parties had a husband or wife living at the time of the marriage.*

In an action brought by a wife against her husband to annul the marriage on the ground of the husband's impotency, the court has power to grant an order directing the husband to pay the wife an allowance for counsel fees and expenses to enable her to prepare for the trial of the action.

Where one of the parties to a marriage is impotent, the marriage is not void *ab initio,* but is merely voidable at the election of the other party.

Until the entry of a decree annulling the marriage such marriage continues to be a valid contract, and imposes upon both parties thereto the marital obligations, among which is the obligation of the husband to provide necessaries for the wife.

*Semble,* that an allowance of alimony and counsel fees may not be made in an action to annul a marriage void *ab initio, e. g.,* where the defendant had a former husband or wife living at the time of the marriage.

APPEAL by the defendant, Franklin P. Gore, from an order of the Supreme Court, made at the St. Lawrence Special Term and entered in the office of the clerk of the county of St. Lawrence on the 20th day of July, 1904, directing the defendant to pay the plaintiff $300 counsel fees and expenses to enable her to prepare for the trial of the action.

*Arthur W. Orvis,* for the appellant.

*Daniel W. Mulligan,* for the respondent.

SMITH, J. :

The object of the action is the annulment of marriage on the ground of defendant's impotency. The Special Term denied the plaintiff temporary alimony, but granted an allowance. Defendant here questions not the amount of the allowance, but the power of the court to grant it.

Notwithstanding the fact that the provisions of the Code of Civil Procedure (§ 1769) in terms authorize the granting of alimony and counsel fee only in actions for divorce or separation, the law is now settled in this State that the same power exists in actions for the annulment of marriage as incidental to the jurisdiction of the court over such actions. In *Higgins* v. *Sharp* (164 N. Y. 4) the Court of Appeals has held : " The Supreme Court, in an action against a wife to annul a ceremonial marriage, has, in a proper case, as an incident to its jurisdiction to entertain the action, power to grant alimony and counsel fees *pendente lite*, although the provisions of the Code of Civil Procedure (§§ 1742 *et seq.*), authorizing and regulating actions to annul a marriage, are silent as to alimony and counsel fees." The practice seems to have been borrowed, according to the authorities, from the practice of the courts of England in matrimonial actions, whether for divorce or for annulment of marriage.

While the defendant does not contest the right of the court, under the authorities, to grant alimony or counsel fee where the suit is brought by the husband against the wife for annulment and the wife defends, insisting upon the legality of the marriage, he contends that where the wife herself brings the suit and asserts the invalidity of the marriage and asks for its dissolution, she has no standing in court to demand either support during the pendency of the action, or suit money for the purpose of prosecuting the same.

If there be any authority for the allowance of alimony and counsel fee in an action for the annulment of a marriage, I am at a loss to see why, upon principle, it should not be allowed to this plaintiff. Her marriage is a perfectly valid marriage until the judgment of the court shall dissolve the same. She may elect to waive her right of annulment, in which case both husband and wife have correlative marital property rights. Even though she elect to ask for the annulment of the marriage, until that annulment she bears to the defendant the legal relation of wife, to which are attached the hus-

band's obligation of support and maintenance. In fact, the right to alimony and counsel fee seems to be incidental to that obligation on the part of the husband to support his wife. In Bishop on Marriage and Divorce (Vol. 2, 6th ed.), in section 387a, the text reads: " We saw, in the first volume, that, among the wife's necessaries, may be reckoned 'provision for her protection in society.' * Within this principle, when such protection involves a litigation with her husband, a third person may render to her needful services therein, and, at law, collect pay for them of him." In section 392 the author further says : " Whatever view is accepted of the questions discussed in the last four sections (the right of the wife to charge the husband for counsel fee as necessaries) the doctrine affords no adequate help to a wife proceeding for a divorce, or defending against her husband's divorce suit. What she needs is, not merely the right to pledge his credit, or to recover her costs at the end of the litigation ; it is to use money in the suit, the same as does her husband ; it is to stand before the tribunal which administers one law alike to husband and wife, on an equal and common ground with him. This, we shall more fully see, as we proceed, the law in most of our States does give her." In section 387 the author says : " Natural justice and the policy of the law alike demand that, in any litigation between husband and wife, they shall have equal facilities for presenting their case before the tribunal. This requires that they shall have equal command of funds. So that, if she is without means, the law having vested the acquisitions of the two in him, he should be compelled to furnish them to her, to an extent rendering her his equal in the suit. The doctrine is a part of the same whereon proceeds temporary alimony. And so the courts hold." In *Jones* v. *Jones* (L. R. 2 Prob. & Div. 337), in discussing the question of alimony upon appeal, MELLOR, J., says : " As regards alimony, under such circumstances as the present, so long as the wife continues a wife, there is no real reason why she should not have alimony, and it is due to her until on the petition there is a final decision against her." BRETT, J., in discussing the same question, says : " I am of the same opinion. The husband being bound to supply his wife with necessaries, it is, in fact, for his relief that an order for alimony should be made. As to the

---

* Vol. 1 (6th ed.), § 554.— [REP.

question of costs, I very much doubt whether in the Ecclesiastical Courts after all the rule went further than that the costs were in the discretion of the court." In *Ottaway* v. *Hamilton* (L. R. 3 C. P. Div. 398), in discussing the question of the liability of the husband for costs to the wife's solicitor in an action brought by her against him for limited divorce, the court says: "Nevertheless, I think that a wife has now the same power of pledging her husband's credit for the costs due to her solicitor in a suit for dissolution of the marriage, as she formerly had for those due to her proctor in a suit in the Ecclesiastical Court for a separation." These authorities are cited for the purpose of showing that from the existence of the marital relation flows the obligation of the husband to pay the costs of a suit brought by the wife against him, and the right of the court as incidental to that obligation to order the costs of the suit to be paid in advance. Until the judgment of nullity in this case, the obligation of the husband to furnish necessities to his wife is just as strong as in an action for a separation, and by analogy would seem to follow the right of the court to require the defendant to pay to her the costs to enable her to prepare for the suit. In the English courts this right in an action for nullity brought by the wife seems to have been recognized. (*S.* v. *B.*, L. R. 9 Prob. Div. 80; *T.* v. *D.*, L. R. 1 Prob. & Div. 127.)

In the courts of this State there has been some disagreement in the decision. In *Allen* v. *Allen* (59 How. Pr. 27) Judge DONOHUE, at Chambers, granted alimony and counsel fee to a wife in an action against her husband to annul a marriage on the ground of physical incapacity. In *Bloodgood* v. *Bloodgood* (59 How. Pr. 42) it is held at Special Term that such allowance was unauthorized in a similar case. In *Meo* v. *Meo* (22 Abb. N. C. 58) Mr. Justice O'BRIEN, at Special Term, held that the court was not authorized to grant an allowance for alimony and counsel fee in an action brought by the wife against the husband to dissolve the marriage on the ground of fraud. Both of the cases denying the power of a court to grant alimony to the plaintiff seem to be based largely upon the dictum of Judge RAPALLO in *Griffin* v. *Griffin* (47 N. Y. 134). That was an action brought by the husband against the wife to have the marriage declared void by reason of her former marriage. The wife defended the action, and the court granted her alimony

and counsel fee. Judge RAPALLO, in writing for the court, says: " It is also very properly restricted to cases where the wife admits the existence of a valid marriage and seeks a divorce or separation for subsequent misconduct of the husband. Where she denies the existence of the marriage, she cannot consistently claim that the defendant is under any obligation to provide her with means to carry on her suit against him." In the case at bar, however, the wife makes no denial of " the existence of the marriage." She admits the marriage — that it is a binding obligation until annuled by the judgment of the court, and asks for such a judgment. And right here is found the distinction between the case of *Griffin* v. *Griffin* (*supra*), with respect of which the dictum is made, and the case at bar. This distinction was apparently overlooked by the learned judges in the *Bloodgood* case and the *Meo* case cited. An action for annulment on the ground that the defendant had a husband or wife living at the time of the contract of marriage with the plaintiff is an action to declare the marriage void *ab initio*. In truth the marriage is absolutely void without a decree of annulment. A plaintiff in such a case needs no decree to free her from the obligations of the ceremonial marriage. Without power in the defendant to contract the marriage the ceremony could impose no marital obligation upon either party. It might well be held, then, where a wife comes into court and says the defendant and herself never were lawfully married, and asks for a decree so holding, there should be no counsel fee or alimony, as in such case there could be no obligation of the defendant to pay any debts contracted by her for necessaries. In the case at bar, however, the marriage is not void *ab initio*. A lawful and binding contract was made subject only to the plaintiff's right to have the same dissolved by reason of the defendant's impotency. Until the decree of annulment the marriage still continues a valid contract and imposes upon both parties the marital obligations, one of which is the obligation of the husband to provide necessaries for his wife. In *Higgins* v. *Sharp* (*supra*) Judge O'BRIEN, in writing for the court, says: " It seems to us, therefore, that actions to annul a marriage are governed with respect to alimony and counsel fees by the same principles as all other actions for divorce." Whether or not this be the rule of law in actions to annul a marriage on the ground

that the defendant had a former husbând or wife living at the time of the contraction of the marriage, upon principle it must be the true rule in an action to annul a marriage on the ground of impotency of the defendant because of the continued existence of the marital relation and its obligations until the decree of annulment.

The order should, therefore, be affirmed, with ten dollars costs and disbursements.

All concurred.

Order affirmed, with ten dollars costs and disbursements.