ROSE MARIE ABATE, Plaintiff, *v.* NICHOLAS ABATE, Defendant.

Supreme Court, Special Term, New York County, June 9, 1938.

*Lawrence W. Silverman,* for the plaintiff.

*Harry Gittleson,* for the defendant.

Cotillo, J.   The basis of the action is non-age of the plaintiff, mixed with elements of duress and fraud.   The right of the wife in such a matter has been the subject of diversity of opinion in the courts of this State.   As to her right to claim maintenance for herself in such a situation, there is a unanimity of views adverse to her.   Were she defendant in such an action her rights would be determined under the well-settled rule in *Higgins* v. *Sharp* (164 N. Y. 4), which sustained the demand for alimony and counsel fees, the court saying (at p. 9): " It seems to us, therefore, that actions to annul a marriage are governed, with respect to alimony and counsel fees, by the same principles as all other actions for divorce.   When the court was vested with jurisdiction in such cases, the incidental power to guard and protect the rights of the wife, which had always been regarded as a part of the jurisdiction, necessarily followed and attached, upon the plainest principles of reason and justice."   This language was spoken in an action in which the husband was the plaintiff.   Its general expression seemed to lend support to the view that it applied equally at least as to counsel fees to an action in which the wife sought the annulment.

In *Gore* v. *Gore* (44 Misc. 323, at p. 329), in a well-reasoned opinion, the court made the strongest argument in favor of an allowance of counsel fees in such a situation, saying: " The plaintiff claims that the defendant knowingly and fraudulently contracted this marriage   *   *   *.   She must go through life burdened with this marriage unless the court relieves her.   If she has no money she is unable to prosecute the action.   We, therefore, have the anomalous position — she is unable to prosecute the action to annul the marriage for want of means.   The law will not compel the husband to furnish her means to prosecute it because she is not his wife; therefore she must continue to be his wife.   It is wrong to say, as some of the cases do, that the courts take her at her word, saying there is no marriage, because she begins the action by admitting that there was a marriage solemnized according to law, but claims that for certain reasons the marriage, as a matter of right and justice to the public, ought not to stand.   When she comes into court saying that a ceremonial marriage was performed, and seeks to avoid it on account of the husband's fraud upon her   *   *   *,   it seems a quibble of words to say that she comes into court admitting that there was no marriage, and therefore the court cannot, in that action, treat her in any respect as a wife.   She comes into court as the wife, claiming to be such, but asks to be relieved of the position on account of the husband's fraud perpetrated upon her."   As to the propriety of denying

alimony in such a case the opinion says: "It may not be unfair, considering that she has left her husband and seeks to go out into the world and support herself, to let that support begin now, and to deny as matter of discretion the application for alimony, but it is necessary for her to have funds to prosecute the action. She has no available resources sufficient to support herself and carry on this action. * * * The husband having fraudulently induced her to enter the marriage relation should furnish her the necessary funds to prosecute the case, so that if she has been defrauded by him she may have such relief as the law allows."

The Appellate Division affirmed (103 App. Div. 74), making a distinction between those annulment cases in which the marriage was void *ab initio* and those in which it was merely voidable, saying: "From the existence of the marital relation flows the obligation of the husband to pay the costs of a suit brought by the wife against him, and the right of the court as incidental to that obligation to order the costs of the suit to be paid in advance. Until the judgment of nullity in this case, the obligation of the husband to furnish necessities to his wife is just as strong as in an action for a separation, and by analogy would seem to follow the right of the court to require the defendant to pay to her the costs to enable her to prepare for the suit."

The authority of the *Gore* case was expressly overruled in *Jones* v. *Brinsmade* (183 N. Y. 258). Chief Judge CULLEN thus expressed the view of the courts: "I think the learned court in the *Gore* case failed to appreciate that the status of the parties established by a decree of nullity necessarily relates back to the time of the contract of marriage. This is the rule applicable to other contracts sought to be rescinded for fraud or other infirmities; he who elects to rescind a contract can claim nothing under it. * * * Such being the effect of a decree annulling a marriage, even though the marriage is only voidable, it seems both unjust and inconsistent that a wife should be allowed alimony and counsel fee out of her husband's estate to establish the invalidity of her marriage, on the theory that by virtue of the marriage relation the husband is bound to provide for her, when if she is successful in that suit her status will be the same as if she had never married him." In a separate concurring opinion Judge GRAY emphasizes the distinction between the situation where the wife seeks relief and where the husband sues for annulment. He expressly limits the application of *Higgins* v. *Sharp* (*supra*) to a case where the husband is the plaintiff.

There has been no change in this rule either by subsequent decision or by statute.

In *Matter of Moncrief* (235 N. Y. 390) the court expressly reaffirmed the rule in *Jones* v. *Brinsmade* (*supra*), citing that case. Referring to *Price* v. *Price* (124 N. Y. 589), in which a marriage was annulled because a former wife was living, although absent for five years, the court said: " Here, also, the marriage was by statute declared void ' only from the time that its nullity shall be pronounced by a court.' * * * We said that at common law where a marriage was annulled the parties were in the same position as though a marriage had never been entered into and the children born of it were all illegitimate unless legitimated by statute. This rule remains unimpaired."

The question of legitimacy of the child of the marriage is not involved here. The ground of the action is either non-age of the plaintiff or fraud and duress. If she prevails under the first ground the child is nevertheless deemed the legitimate child of both parents under subdivision 1 of section 1135 of the Civil Practice Act. If it is annulled on the ground of force, duress or fraud, the child is also deemed the legitimate child of both parents unless the court by the judgment decides otherwise as to either or both parents. (Id. subd. 4.) That a judgment if the wife prevails will declare the child the legitimate child of both parents there can be no doubt in this case. This matter of legitimacy is of further interest in view of the order which I am making for the contribution to the support of the child by the defendant husband.

Section 1140 of the Civil Practice Act provides that if a marriage be declared a nullity the court by the judgment or by a subsequent order may award the custody of the child to either party and may make provision for his education and maintenance out of the property of either or both of its parents, and out of the property of the guilty parent if the marriage shall have been annulled.

While no provision is made in the statute for temporary allowances to the wife in an annulment action, this fact would not deprive a court of equity of such original jurisdiction as it had with respect to matrimonial actions, over a subject-matter as to which the Legislature has failed to make provision. (*Kellogg* v. *Kellogg*, 122 Misc. 734; *Higgins* v. *Sharp*, *supra*.) The allowances in cases of this kind where the husband is plaintiff, in the absence of any express authorization of the statute, would seem to substantiate this view. Although section 1140 provides only for permanent support of a child by the guilty party, in the final judgment or subsequent thereto that section is not a limitation of the equitable power of this court to make provision for the support, *pendente lite*, of the child of the marriage while in custody of the plaintiff. It is not the type of temporary alimony that is barred in cases where the

wife sues for annulment, but is warranted by the general equitable power of the court. Accordingly I have allowed five dollars for the support of the child during the pendency of the action.

It may be interesting to refer to the comparatively recent case of *Ginsbarg* v. *Ginsbarg* (236 App. Div. 844), in the Second Department, as a possible authority for allowance of counsel fees. In that memorandum decision the court said there was no abuse of discretion by the Special Term in giving an allowance to plaintiff to enable her to pay counsel for services in various motions made by defendant in which he was unsuccessful, and for the protection of her interests on the appeal by defendant to that court from the order denying his motion for judgment on the pleadings. The dissenting opinion by two of the justices indicates that the action was one for annulment brought by the wife. The dissent was on the ground that there is no jurisdiction to allow counsel fee to plaintiff in an action for annulment, *Jones* v. *Brinsmade* (*supra*) being cited as authority. The dissenting justices were of the view that the allowance of costs upon the motions was to be deemed sufficient. Leave to go to the Court of Appeals was denied and the case was never passed upon by the highest court. There is nothing, however, in that decision which impairs the rule that plaintiff in an action for annulment cannot obtain counsel fee *pendente lite*. In that case plaintiff was compelled to resist the efforts of defendant, not in defending the main action, but in connection with various dilatory motions in which he was unsuccessful, including an appeal in such matters. It does not in any way indicate that there has been a change in the law, as finally established in *Jones* v. *Brinsmade* (*supra*), which I have followed in this decision.

The motion for counsel fee is denied, and the motion for alimony is disposed of by allowing five dollars per week to the plaintiff for the support of the child of the marriage. Submit order.