[No. 187.  Decided June 15, 1891.]

FLETCHER R. FIELDS, SIMON G. FIELDS AND NANCY E. FIELDS v. SARAH J. FIELDS.

DIVORCE—DIVISION OF PROPERTY—FRAUDULENT CONVEYANCE—
CUSTODY OF CHILDREN.

Under § 2007, Code 1881, the court decreeing a divorce has power to make division of all the property of the parties, whether it is community or separate property, and the court will consider through whom the property was acquired merely as a circumstance to aid it in making an equitable division.

Where a man, just prior to commencing a suit for divorce, conveys to his brother all his real and personal property, including his home, without receiving any cash payment therefor, or any written security, without any definite time of payment agreed upon, and dependent upon the grantee's verbal promise to give him some money from time to time, the conveyance will be held fraudulent as against the wife.

A decree awarding the custody of children to the wife, although her conduct may not be entirely blameless, will be upheld where it is shown that the husband is in the habit of getting under the influence of liquor, that he has treated his wife harshly and cruelly, sometimes striking her, and has made charges of adultery against her which he has failed to sustain.

*Appeal from Superior Court, Walla Walla County.*

*D. J. Crowley,* and *Geo. T. Thompson,* for appellants.

*Brents & Clark,* for appellee.

The opinion of the court was delivered by

DUNBAR, J.—This action is brought by the plaintiff against the defendant for a decree of divorce, the division of the property, and the custody of the minor children. It seems from the testimony that the plaintiff and defendant commenced living together in 1873; that a marriage license was obtained; that they went to a neighboring town for the purpose of getting married, but returned without having the marriage ceremony performed; that they represented themselves as husband and wife; that they lived and cohabited together as husband and wife; that several children were born to them; that they conveyed and encumbered land as husband and wife; and that in the community in which they lived they were generally thought to be husband and wife; that this state of affairs existed until about three years before the commencement of this action, when they had the marriage ceremony performed in the statutory form. At the time they commenced living together in 1873 the defendant had no property, and the plaintiff had property variously estimated at from two to eight thousand dollars. The court below found it was worth $3,000, which was probably a reasonable valuation. There are now living two minor children the fruits of their union, to wit: Maud May Fields, aged twelve years; and Fletcher R. Fields, Jr., aged five years. The complaint alleges that the parties plaintiff and defendant were intermarried on February 6, 1888; alleges cruel and inhuman treatment on the part of the defendant towards plaintiff, and charges defendant with adultery with divers persons, some named and others unnamed. The answer of the defendant is a denial of the adultery and of the cruel and inhuman treatment charged, and alleges various acts of cruelty on the part of the plaintiff, such as frequently and falsely accusing her of adultery with divers and sundry people, applying to her in-

sulting, degrading and opprobrious epithets, and vulgar and indecent names, in the hearing of others, and that he had cursed and applied vile epithets to his little daughter; that he had struck defendant, and threatened to kill her, and drove her away from their house; that for the last two years he was in the habit of being frequently drunk; and many other damaging allegations. Defendant alleges their inter-marriage in October, 1873. The reply of plaintiff denies all affirmative allegations in the answer, excepting that he admits that on the 23d day of April, 1890, he struck plaint-iff; and admits that during the last two years he has been occasionally drunk. Afterwards, on the petition of defend-ant, alleging the conveyance of Fletcher R. Fields to Simon G. Fields of certain lands claimed to belong jointly to the plaintiff and defendant, the said Simon G. Fields and his wife, Nancy E. Fields, were made parties to this action, and filed an answer denying the fraudulency of the convey-ance, and alleging that said conveyance was made in good faith.

The principal legal discussion in this case was as to the *status* of the property with relation to the community prop-erty laws. Appellants contended that a great portion, if not all, the property involved, was the separate property of the husband; and appellee contended that it was commu-nity property. The decision of the court in *Webster v. Webster*, *ante*, p. 417 (at this term), eliminates that question from this case, as it was there held that under the pro-visions of § 2007 of the code, the court decreeing a divorce has power to make division of all the property of the par-ties, whether it was community or separate property, and the court would only consider through whom the property was acquired as a circumstance to aid it in making an equi-table division; and, while it is a circumstance to be consid-ered, it is not a controlling fact, but will be considered by the court as any other important fact in the case.

Some discussion was had as to the extent of the authority conferred by a power of attorney given by the defendant to the plaintiff, under authority of which plaintiff conveyed the land to Simon G. Fields. Without discussing the legality or potency of the instrument, it seems to me that the unusual character of this transaction and all the circumstances surrounding it conclusively point to fraud on the part of the plaintiff, if not also on the part of Simon G. Fields. Here was an $18,000 transaction, involving all the property, according to the testimony of the plaintiff, that he had; involving the home of himself and family, sold to his own brother, just prior to the time he commenced suit against his wife for divorce, and when he evidently had the suit in contemplation (the deed being executed May 11, 1890, and the complaint filed in the clerk's office the 14th day of May succeeding); a wife who had a short time before brought two suits for divorce; a wife whom he testified was "trying to break him up;" a sale made and deed executed on the strength of a power of attorney the legality of which he was doubtful of himself, and made after he had tried and failed to get a good power of attorney from the defendant, and after her refusal to give a better power of attorney had been made known to the purchaser. It is not thus that business is transacted that is open and above board. If the defendant refused to execute the power of attorney, and both of the parties to the sale knew this, it was notice to them that she did not wish to convey any property under the power of attorney already given, and was undoubtedly intended by her, and understood by them, as a revocation of the power of attorney, and from that they understood her unwillingness to sell; but, notwithstanding this fact, on failing to obtain a better power of attorney, they concluded to chance the one they had. We quote from the testimony of Simon G. Fields on cross-examination:

"Q. You knew at the time you bought this place, did you not, that his wife had some trouble, and he intended to bring this suit? A. I didn't know he was going to bring it so soon. I knew he had started to do it once or twice before that. I expected suit would be brought.

"Q. You were expected to obtain this property, and hold it during the suit, were you not? A. I don't know as I was.

"Q. Wasn't that the object in the transfer of this property? A. No, sir.

"Q. How did you pay him for it? A. I haven't paid him yet.

"Q. How did you secure him? Did you give him a mortgage? A. No, sir.

"Q. And you gave no security at all, then? A. None only my word. He owed me a little, and he was to have the crop.

"Q. Has he not asked you for any notes or mortgages or anything? A. No, sir.

"Q. The court: Did he take your word for the whole price of eighteen thousand dollars? A. Yes, sir.

"Q. The deed was the only writing that passed between you? You were to deed this place back to him after suit were you not? A. I was to deed it back if I wanted to."

Witness also testified that he was to pay no interest on the purchase price, and that there was no definite time at which the payment was to be made; or, to use his own words:

"Well, he said he would give me time. He said he would want some money off and on. I said I would give him some money at times. There was no fixed time."

There was really no agreed valuation of the land, according to their own statement; for there was no interest to be paid, and the real price to be paid would depend upon the time of the payment of the principal, and, as this time was not agreed upon, the actual agreed price of the land could not have been determined. In my judgment the whole

transaction is inconsistent with the theory of good faith. Men of good business capacity, as the plaintiff is conceded to be, do not transact important business in this way.

There seems to be no doubt that the parties commenced living together as husband and wife in the fall of 1873; and, while neither party in this case is probably entirely blameless, the testimony of the plaintiff, in his attempt to evade the fact that he had held defendant out to the world as his wife, has a tendency to weaken the effect of his testimony on other points; and the entire failure of plaintiff to prove the charges of adultery against his wife is to be taken against him. These are charges which a man with a proper appreciation of the domestic relation would hesitate to make against the mother of his children under any circumstances, and where the proof utterly fails, as in this case, shows a very debased condition of mind. Outside of the testimony of defendant as to harsh and cruel treatment, plaintiff himself admits of having struck her on one occasion. A distinguished writer has said:

"He who lays his hand upon a woman, save in the way of kindness, is a wretch, whom it were base flattery to call a man."

This sentiment, while poetically expressed, is literally true; for, no matter what the provocation may be, there is no palliation or excuse for this brutal offense. Plaintiff also admits having been drunk several times during the last two years, and the testimony outside of his own admission shows that he has been under the influence of liquor a considerable portion of the time; to such an extent, at least, that he is evidently not a proper person to be intrusted with the care and guardianship of the children. Taking all the circumstances of the case into consideration, without further particularizing, we think there was no abuse of discretion by the judge who tried the case, and

that the judgment should therefore be affirmed, including the allowance of $150 for services of defendant's attorneys in this court, and it is so ordered.

HOYT, SCOTT, and STILES, JJ., concur.

ANDERS, C. J., not sitting.