[No. 7261.  Decided August 8, 1908.]

MARY BUCKLEY, *Respondent*, v. ANDREW BUCKLEY, *Appellant*.[1]

PHILOMENE BUCKLEY, *Plaintiff and Appellant*, v. ANDREW BUCKLEY, *Defendant and Appellant*.

MARRIAGE—ANNULMENT—GROUNDS — ACTIONS — FORM.  Where it appears that a woman entered into a contract of marriage in good faith without knowledge that the man was incompetent by reason of having another wife, the court has power to annul the marriage without regard to the form of action commenced by her for redress.

SAME—RELIEF GRANTED—DIVISION OF PROPERTY.  In an action for the annulment of a marriage entered into in good faith by the woman without knowledge that the defendant had another wife, the court has jurisdiction to dispose of the property as in the case of a divorce, under Bal. Code, § 5723, awarding the plaintiff such proportion as would be just and equitable, where she materially helped to acquire and save it (RUDKIN, J., dissenting).

DIVORCE — JURISDICTION OF COURT — DOMICILE — JUDGMENTS —. OF SISTER STATE—CREDIT TO BE ACCORDED—COMITY.  Where, upon service of summons by publication, a divorce is secured in a sister state, which was the domicile of the marital relation and the actual *bona fide* home of the plaintiff, the decree is entitled to recognition in every other state, under the full faith and credit clause of the constitution, or at least will be accorded credit in this state as a matter of comity.

PLEADING—DEPARTURE—DIVORCE—ANNULMENT OF MARRIAGE.  It is not a material variance, that, in an action for a divorce, the plaintiff, in reply to an answer setting up the illegality of the marriage, proved the annulment of the marriage.

DIVORCE—DISPOSITION OF PROPERTY—OF PARTIES DIVORCED BY FOREIGN DECREE.  Where the courts of a sister state grant a divorce to a wife domiciled there without disposing of the property of the husband situated in this state, where the husband resides, the courts of this state may thereafter, in any appropriate action, divide the property as authorized by Bal. Code, § 5723, in the case of a divorce granted here; and the wife cannot claim an absolute right to one-half thereof as between tenants in common.  ·

Appeal from a judgment of the superior court for King county, Frater, J., entered December 19, 1907, upon find-

[1]Reported in 96 Pac. 1079.

ings in favor of the plaintiff, after a trial on the merits before the court without a jury, in consolidated actions for the annulment of a marriage and a division of property. Affirmed.

*John E. Humphries* and *George B. Cole*, for appellant Andrew Buckley.

*McClure & McClure*, for appellant Philomene Buckley.

*Higgins, Hall & Halverstadt*, for respondent.

ROOT, J.——This is an appeal from a judgment and decree rendered in two cases that were consolidated for trial, one being by the respondent against appellant Andrew Buckley for divorce or annulment of marriage and division of property, the other being by the appellant Philomene Buckley against appellant Andrew Buckley for a division of property claimed to have been acquired while he and she were husband and wife.

The material facts, as found by the court, and which we believe to be sustained by the evidence, were about these: On or about the 15th day of October, 1898, in the city of St. Paul, Minnesota, Mary Buckley and Andrew Buckley entered into an oral agreement of marriage, and then and there entered into the marriage state. The law of that state permitted common law marriages. At that time he had a former wife living from whom he had never been divorced, and she had a former husband living from whom she had not been divorced. She had reason to, and did, believe that her former husband had obtained a divorce from her prior to this time. She did not know that Andrew Buckley had a wife living, or that he had ever been married, but believed that he was unmarried and competent to enter into a contract of marriage with her.

On the 11th day of September, 1877, at Detroit, Michigan, appellant Philomene Buckley and appellant Andrew Buckley intermarried; and they lived together until about

October 29, 1877, when he deserted her, and has never lived
with nor supported her since. No justification is shown
for this desertion. As a result of this marriage, a child was
born in 1878. Philomene Buckley, believing that her hus-
band Andrew Buckley had been drowned, intermarried a few
years thereafter with one Young. In 1907 Philomene Buck-
ley, having learned that her former husband, Andrew Buckley,
was alive, brought an action for divorce in the superior court
of Cook county, state of Illinois, the same being a court of
general jurisdiction, and she at that time being, and having
been for a year or more theretofore, a *bona fide* resident of
said state. Her complaint was filed in said court, and sum-
mons was served by publication in the manner and form re-
quired by the statutes of the state of Illinois. Thereupon
the cause was brought on for trial, Andrew Buckley not ap-
pearing, and the court entered a judgment and decree dis-
solving the bonds of matrimony existing between Philomene
and Andrew Buckley, but declining to make any order, judg-
ment, or decree affecting the property of these parties, or
either of them, situate in the state of Washington.

As a ground for her action, Mary Buckley assigned
cruelty, personal indignities, and drunkenness. These allega-
tions were supported by the evidence adduced at the trial, and
the trial court rendered a judgment and decree annulling her
marriage contract with the defendant, and awarding her an
undivided one-fourth interest in all of the real estate of said
Andrew Buckley. The court awarded to Philomene Buckley
an undivided one-fourth interest in and to all the real prop-
erty belonging to Andrew Buckley.

It is the contention of Andrew Buckley that Mary Buckley
never became his wife, and that the court was without author-
ity to award her any portion of the property standing in his
name or which he had acquired. Whatever may be said of the
right of Mary Buckley to recover in the form of action
instituted here, it cannot be doubted that she is entitled to
some redress or compensation in some form of action against

Andrew Buckley. Under the law of this state, the courts are called upon to regard substance rather than form, and it is not the policy of our law to turn a suitor out of one door of the court to come in at another in order to secure justice. Where a woman in good faith enters into a marriage contract with a man, and they assume and enter into the marriage state pursuant to any ceremony or agreement recognized by the law of the place, which marriage would be legal except for the incompetency of the man, which he conceals from the woman, a status is created which will justify a court in rendering a decree of annulment of the attempted and assumed marriage contract, upon complaint of the innocent party; and where in such a case the facts are as they have been found here, where the woman helped to acquire and very materially to save the property, the court has jurisdiction as between the parties, to dispose of their property as it would do under Bal. Code, § 5723, (P. C. § 4637), in a case of granting a divorce—awarding to the innocent, injured woman such proportion of the property as, under all the circumstances, would be just and equitable.

"When either party to a marriage shall be incapable of consenting thereto, for want of legal age or a sufficient understanding, or when the consent of either party shall be obtained by force or fraud, such marriage is voidable, but only at the suit of the party laboring under the disability, or upon whom the force or fraud is imposed." Bal. Code, § 4477 (P. C. § 6262).

"When there is any doubt as to the facts rendering a marriage void, either party may apply for, and on proof obtain, a decree of nullity of marriage." Bal. Code, § 5717 (P. C. § 4631).

"Any person who has been a resident of the state for one year may file his or her complaint for a divorce or decree of nullity of marriage, under oath, in the superior court of the county where he or she may reside, and like proceedings shall be had thereon as in civil cases." Bal. Code, § 5718 (P. C. § 4632).

In the case of *Piper v. Piper*, 46 Wash. 671, 91 Pac. 189, this court held that the rule covering the publication of summons in divorce cases applied likewise to actions for the annulment of marriage. Among other things the court said:

"Appellant argues that an action for annulment of a marriage is, in this state, of the same nature as an action for divorce, and that it has always been treated by our legislatures in the passage of statutes as in effect the same. We believe this is true. . . . It thus appears that our legislature has invariably treated actions for divorce and for the annulment of marriages as belonging to one general subject, and in conferring jurisdiction to grant divorces it has also been made to include the annulment of marriages. . . . In view of the not uncommon legislative policy above indicated, as well as in view of the express provisions of our statutes, we think it has been the evident intention of our legislature to establish the same jurisdiction and practice for both divorce and annulment suits."

In his article on Marriage, 26 Cyc. 918, 919, Mr. Justice Harlan of the United States supreme court says:

"Permanent alimony cannot be granted in cases of this kind, for if a decree is made in accordance with the prayer of the petition it must adjudge the pretended marriage void *ab initio* and consequently that the parties never sustained the relation of husband and wife. But where the woman is of good character and blameless in the affair, even though the marriage is declared void, she may be entitled to receive a substantial allowance, not technically as alimony, but by way of compensation for the pecuniary benefits derived by the man during the supposed marriage relation. . . . So, in passing the sentence of annulment, the court has power by statute in some states, and apparently at common law, to make an order for restitution to the wife of the property which the husband received from her or of which he acquired possession by virtue of the marriage. And in other cases where a party has been tricked or duped into a marriage and it is annulled, the court may order the restoration to him of his property fraudulently acquired and converted by the other party. Also where the wife entered into the marriage in good faith and is free from blame and it is annulled for the fault of the hus-

band, she may be allowed substantial compensation for the benefits which he received or the loss which she suffered in consequence of the marriage."

In the case of *Werner v. Werner*, 59 Kan. 399, 53 Pac. 127, 68 Am. St. 372, 41 L. R. A. 349, the supreme court of Kansas said:

"It is true, as the plaintiff in error contends, that the marriage between the parties was absolutely void from the beginning. Although living together as husband and wife, they were not in fact married, and hence no allowance could be made as alimony. The rule is that permanent alimony can only be allowed where the relation of husband and wife has existed; but this rule does not preclude an equitable division of the property where there is a judicial separation of the parties on account of the invalidity of the marriage contract. *Fuller v. Fuller*, 33 Kan. 582, 7 Pac. 241. Strictly speaking, this action as it was tried was not a divorce proceeding, but it was rather one to annul a void marriage. Although instituted under the statutes to obtain a divorce, the pleadings were so drawn and the issues so shaped that it was within the power of the court to grant relief independently of the statutes relating to divorce, and it rendered a decree of nullity, rather than a decree of divorce. The plaintiff below set forth at length the description and nature of the property which had been acquired by the parties, the manner in which it had been acquired, and her interest in the same, and in the prayer of her reply she asks to be allowed a just and equitable division of the same in case the marriage was held to be null and void. The court in its decree did not treat the award as alimony, but rather adjudged her a share of the property jointly accumulated by the parties during the time they lived together as husband and wife. *Fuller v. Fuller, supra*, greatly relied on by the plaintiff in error, holds, it is true, that in an action of this character the defendant is not entitled to recover permanent alimony, but at the same time it is expressly stated: 'That in all judicial separations of persons who have lived together as husband and wife a fair and equitable division of their property should be had; and the court in making such division should inquire into the amount that each originally owned, the amount that each party received while they were living together, and the amount of

their joint accumulations.' Even in cases where the marriage is valid, and a divorce is refused for any cause, the court may adjudge an equitable division and disposition of the property of the parties. Civil Code, § 643. But independently of the statute of divorce, we think the court had authority to decree, not only an annulment of the marriage, but also the division of the property which had been jointly accumulated by the parties. It was an equitable proceeding and, within its equity power, the district court had full jurisdiction to give adequate relief to the parties. The division that was made was eminently equitable and just."

See, also, *Scrimshire v. Scrimshire*, 4 Eng. Eccl. 562; *Arey v. Arey*, 22 Wash. 261, 60 Pac. 724; 2 Am. & Eng. Ency. Law (2d ed.), pp. 104, 117-8; 6 Current Law, 515; *Werner v. Werner, supra; Strode v. Strode*, 3 Bush. 227, 96 Am. Dec. 211; *Eliot v. Eliot*, 77 Wis. 634, 46 N. W. 806, 10 L. R. A. 568; *Barkley v. Dumke*, 99 Tex. 150, 87 S. W. 1147; *Selby v. Selby*, 27 R. I. 172, 61 Atl. 142; *Stapleberg v. Stapleberg*, 77 Conn. 31, 58 Atl. 233; *Gore v. Gore*, 44 Misc. Rep. 323, 89 N. Y. Supp. 902; *Blankenmiester v. Blankenmiester*, 106 Mo. App. 390, 80 S. W. 706.

It is also urged by appellant Andrew Buckley that the certified copies of the decree of divorce in the case of J. T. Bell v. Mary Bell (this respondent Mary Buckley) and that of the case of Philomene Buckley v. Andrew Buckley were incompetent evidence; that the decree in each of those cases was of no effect in this state. In support of this contention reliance is placed upon the case of *Haddock v. Haddock*, 201 U. S. 562, 26 Sup. Ct. 525. It appears that Bell obtained a decree of divorce against respondent Mary Buckley in the territory of Oklahoma at a time when he was living in that territory, which was at said time the "domicile" of the "marriage relation." She was absent from the territory and service was had by publication of summons. The case of Philomene Buckley v. Andrew Buckley was prosecuted in Illinois, which was and had been for many years the home of Philomene Buckley; she having removed to that state from Mich-

igan after her desertion by appellant Andrew Buckley. Sum•
mons was published in this case. Neither personal service
upon nor appearance by defendant in either case.

In the *Haddock* case the supreme court stated several legal
propositions as having been "irrevocably concluded by previ-
ous decisions" of that court, and which were accepted as a
basis for the arguments put forth to sustain the conclusion
announced in the case then at bar. One of these propositions
was stated as follows:

"The place where the wife was domiciled when so aban-
doned constitutes her legal domicile until a new actual domicile
is by her elsewhere acquired."

This would clearly imply that she could acquire an actual
domicile elsewhere than in the state where their domicile was
at the time of her abandonment. The following proposition
was also announced:

"So also it is settled that where the domicile of a husband
is in a particular state, and that state is also the domicile of
matrimony, the courts of such state having jurisdiction over
the husband may, in virtue of the duty of the wife to be at
the matrimonial domicile, disregard an unjustifiable absence
therefrom, and treat the wife as having her domicile in the
state of the matrimonial domicile for the purpose of dissolu-
tion of the marriage, and as a result have power to render a
judgment dissolving the marriage which will be binding upon
both parties, and will be entitled to recognition in all other
states by virtue of the full faith and credit clause."

*Atherton v. Atherton*, 181 U. S. 155, 21 Sup. Ct. 544, 45
L. Ed. 794, is cited in support of this proposition. It was
also stated that, where the husband abandons his wife and
goes into another state in order to avoid his marital obliga-
tions, such other state does not become a new domicile of
matrimony, and is not to be treated as the actual or construc-
tive domicile of the wife. In the *Haddock* case the marriage
took place in New York and the husband removed to Con-
necticut, where he secured a divorce by publication without

personal service upon the defendant, who remained a resident
of the state of New York. She subsequently prosecuted an
action in her home state, to which action he interposed in de-
fense the judgment of the Connecticut court. The substance
of the decision of the United States supreme court was, as we
understand it, that the courts of New York were not com-
pelled by virtue of the full faith and credit clause of the
Federal constitution to recognize the decree of the Connecti-
cut court, although as a matter of comity they might so do.
In that case it was also announced that the principles apply-
ing to a judgment *in personam* did not relate to proceedings
*in rem*, the court using this language:

"That is to say, in consequence of the authority which
government possesses over things within its border there is
jurisdiction in a court of a state by a proceeding *in rem*,
after the giving of reasonable opportunity to the owner to
defend, to affect things within the jurisdiction of the court,
even although jurisdiction is not directly acquired over the
person of the owner of the thing."

Discussing a suit for divorce as a proceeding *in rem*, the
court propounds the question as to what constitutes the *res*,
and says that, if the marriage relation constitutes this, it
cannot be supposed that it was removed from New York to
Connecticut when the husband wrongfully abandoned the wife
and went from the state of New York into Connecticut; and
that anyhow, if he could take a portion of the *res*, the other
portion would remain with the wife where the marriage took
place and where her domicile legally remained. The court
says:

"On the other hand, the denial of the power to enforce in
another state a decree of divorce rendered against a person
who was not subject to the jurisdiction of the state in which
the decree was rendered obviates all the contradictions and
inconveniences which are above indicated. It leaves uncur-
tailed the legitimate power of all the states over a subject
peculiarly within their authority, and thus not only enables
them to maintain their public policy but also to protect the

individual rights of their citizens. It does not deprive a state of the power to render a decree of divorce susceptible of being enforced within its borders as to persons within the jurisdiction, and does not debar other states from giving such effect to a judgment of that character as they may elect to do under mere principles of state comity. . . . It enables the states rendering such decrees to take into view for the purpose of the exercise of their authority the existence of a matrimonial domicile from which the presence of a party not physically present within the borders of a state may be constructively found to exist."

Under this holding it would seem that, Philomene Buckley having obtained a decree of divorce pursuant to the laws of the state of Illinois in the courts of that state, which at that time was, and for several years theretofore had been, her actual *bona fide* home and which was the "domicile" of the marital relation, such decree was not only valid in that state, but entitled to recognition in every other under the full faith and credit clause of the constitution. If, however, this be not the meaning of the language used by that court, then we think there is no question but that, as a matter of comity, the courts of this state may recognize the decree rendered by the court of Illinois. The same observations may be made regarding the decree of the Oklahoma court in the case of J. T. Bell v. Mary Bell, now Mary Buckley. We, therefore, hold that the trial court was not in error in admitting in evidence the divorce decrees referred to.

It is further contended by appellant Andrew Buckley that, inasmuch as Mary Buckley's complaint herein was one as in an action for divorce, while in her reply to appellant's answer she prayed for a decree of annulment of marriage, the latter prayer being granted by the court, there was such a variance as should prevent her from having any relief in this action. We do not think this contention is meritorious. 25 Cyc. 900; *Werner v. Werner, supra.*

It is contended by the appellant Philomene Buckley that, after the decree of divorce was rendered in her suit against

Andrew Buckley in Illinois, she and Andrew Buckley became tenants in common as to all of the property which he had accumulated and which was situated in the state of Washington; that each became the owner of an undivided one-half interest therein, and that she is entitled in this action to have the court set aside to her one-half of all of such property. We think that where a court of a sister state grants a decree of divorce to a wife residing in that state and makes no disposition of the property belonging to the parties and situated in our state where the husband resides, the courts of this state may thereafter, in a timely suit for partition, or in any other appropriate action, divide the property in this state between the parties as it would do under Bal. Code, § 5723 (P. C. § 4637) in a divorce proceeding. *Adams v. Abbott,* 21 Wash. 29, 56 Pac. 931; *Webster v. Webster,* 2 Wash. 417, 26 Pac. 864; *Fields v. Fields,* 2 Wash. 441, 27 Pac. 267; *Cook v. Cook,* 56 Wis. 195, 14 N. W. 33, 443, 43 Am. Rep. 706; 1 Ency. Plead. & Prac., 415. In this action we think the trial court was authorized to divide the property of Andrew Buckley and Philomene Buckley between them in such a manner as it deemed just and equitable under all the circumstances of the case, and that it was not obliged to divide the property equally or in any definite proportions other than would be thus equitable and just. The value of the property was not found by the trial court. The total value was probably $5,000 or $6,000. Bearing in mind that appellant Buckley accumulated this property, and that he is now sixty-six years old, in feeble health, requiring support, medical attendance, and nursing, we cannot say that the disposition of the property, as made by the trial court, was erroneous, inequitable, or unjust.

Finding no error in the record, and believing that substantial justice has been done as between all these parties, the judgment and decree is affirmed.

HADLEY, C. J., and CROW, J., concur.

FULLERTON, J., concurs in the result.

RUDKIN, J. (concurring)—I concur in the judgment of affirmance but not in the application of Bal. Code, § 5723 (P. C. § 4637), to the annulment proceedings of Mary Buckley against Andrew Buckley. Between these parties there was no marriage, and their property should be divided or distributed according to the rules governing the division or distribution of the joint accumulations of any other persons between whom no marriage exists. As applicable to such a proceeding, I approve the rule announced in the authorities cited in the majority opinion; viz., that the court may restore to the woman any property the man may have acquired by or through her, may compensate the woman for any pecuniary benefits derived by the man during the existence of such relation, or may make a just and equitable distribution of their joint accumulations. But this is very different from the power exercised by the court under § 5723. Under that section the court considers not only the party through whom the property was acquired, but also the merits of the parties and the condition they will be left in by the divorce. It not only considers the past but provides for the future as well. It may, and generally does, provide for the future maintenance and support of the wife, by general alimony or by an award of property, especially where the husband is at fault. None of these considerations enter into a decree of nullity. In the one case the property is simply distributed to those who have aided and assisted in its acquisition. In the other case the court exercises a broader discretion, distributes the property according to different rules, and adjusts the rights, duties, and obligations growing out of the marriage relation. It seems to me that even a superficial reading of this section would convince one that a valid subsisting marriage lies at its very foundation. I believe, however, that the division made by the lower court was equitable and just under all the circumstances, without any regard whatever to § 5723, and that its judgment should be affirmed.