[Civ. No. 13590.   Second Dist., Div. One.   May 8, 1942.]

## HAROLD F. GOFF, Respondent, v. RUTH ANN GOFF, Appellant.

P. E. Durkee for Appellant.

George Appell and Harry A. Mock for Respondent.

WHITE, J.—Appeal by defendant and cross-complainant in an action for annulment of a marriage, wherein the court ordered judgment of annulment in favor of plaintiff and cross-defendant.

Epitomizing the facts, it appears from the record that on or about September 7, 1935, the parties hereto, after cohabiting together for a period of two years, entered into a marriage ceremony at Ventura in this state. On July 1, 1940, plaintiff commenced an action against defendant, in the first cause of action of which he prayed for annulment of the marriage on the grounds that defendant falsely and fraudulently repre-

sented to plaintiff that she was a single woman, when in truth and in fact she had, prior to the solemnization of her marriage to plaintiff, married one Derwood B. Williams, which prior marriage had not been dissolved. Defendant filed an answer and cross-complaint for divorce. By the former she denied each and every allegation in plaintiff's first cause of action contained, save and except the fact of her prior marriage to Williams, but asserted in reference thereto that such marriage, prior to her marriage to plaintiff, had been regularly and duly dissolved by decree of a competent court. In her cross-complaint defendant sought a decree dissolving her marriage to plaintiff on the ground of desertion, while in the same pleading she alleged the existence of certain community property, both real and personal, belonging to the parties, and asked for an equal division thereof.

Following trial, the court entered a judgment decreeing that the marriage between plaintiff and defendant be annulled and set aside as an invalid marriage and further decreeing that the plaintiff was the owner as his sole and separate property of all the property, both real and personal, title to which was placed in issue by the pleadings, save and except the household furniture, which was awarded to defendant.

As a first ground of appeal it is contended by appellant that her marriage to respondent was legal and valid by reason of the provisions of subdivision 2 of section 61 of the Civil Code, which provides that a subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, ". . . 2. Unless such former husband or wife is absent, and not known to such person to be living for the space of five successive years immediately preceding such subsequent marriage, or is generally reputed or believed by such person to be dead at the time such subsequent marriage was contracted. In either of which cases the subsequent marriage is valid until its nullity is adjudged by a competent tribunal."

In the instant case the husband testified that previous to the time of his marriage to the defendant she told him that she had been previously married, but that her first husband was dead. Plaintiff further testified that some three years after his marriage he received two letters from the defendant, in which communications she advised plaintiff, "I guess this

will make you feel better to know that you are not married to me at all. . . . I was never divorced of my husband. That is why he was always after me for money or he would come and tell you about . . .'' In one of the letters defendant advised plaintiff of her fear that her first husband would contact plaintiff and tell him of her prior marriage and of the fact that her first husband was living. Among other things, she wrote: ''Believe me, I have had some hard time trying to keep you from know about it, and so every time he came round he wanted money, I had to get it some way for him. If I did not I know what he would do. . . .'' Defendant further wrote: ''I have lived in H--- for the last 20 years with that fear always before that someone would some day find out about it. And the one I didn't want to know most of all was you.'' Plaintiff further testified that subsequent to the receipt of the two letters aforesaid he had a conversation with defendant in which he requested an explanation of the letters, whereupon defendant represented that the person referred to in her letters was her former husband, who was trying to induce her to obtain money from plaintiff to give to such former husband, and that she was afraid of the latter. Plaintiff further testified that defendant had at one time during their marriage been arrested and charged with perjury, and in support thereof introduced in evidence an original file of the Superior Court of Los Angeles County which contained a record of defendant's plea of guilty to a charge of perjury based upon certain statements made by her in connection with her receipt of state aid. Upon this charge defendant was placed on probation, and as a term of probation was required to serve approximately eight months in the Los Angeles County jail.

With reference to the property alleged by defendant in her cross-complaint to be community property, plaintiff testified that he had purchased said property with his own personal funds, taking title in the names of both himself and defendant; that subsequently, in consideration of ten dollars paid by him to the defendant, she executed deeds to the real property vesting title exclusively in the plaintiff.

It was also established at the trial that on August 1, 1939, there was filed in the Superior Court of Los Angeles County an action commenced by defendant herein against Derwood Belmont Williams, the former husband of defendant, in which action she sought a divorce from him on the ground of deser-

tion. In this divorce proceeding the defendant herein, as plaintiff in such action, alleged that she was married to the therein named defendant, Williams, on September 13, 1915; that on or about January 26, 1916, her said husband deserted and abandoned her, "and ever since has, and still continues to, so wilfully and without cause, desert and abandon said plaintiff, and to live separate and apart from her without any sufficient cause, and without any reason and against her will and without her consent."

Testifying in her own behalf in the action with which we are here concerned, defendant testified that when she wrote the letters hereinbefore referred to she was in the hospital at San Mateo; that she was sick and infirm, and that the contents of the letters were not true. She denied the conversations with plaintiff hereinbefore narrated and stated on the witness stand that she had never seen her former husband since the date he deserted her in 1916. In answer to the question as to why she wrote the county clerk of Mendocino County after she had been married to plaintiff herein, requesting information as to whether her former husband had filed an action for divorce against her, she stated that she did so because she had learned from her former husband's mother that he had obtained a divorce, which fact she wanted to verify. With reference to filing an action for divorce against her former husband, defendant testified that she never intended such action to be against her former husband, but intended the same to be filed against her present husband. This fact, however, was contradicted by the attorney who prepared the pleadings in the divorce action against the former husband.

It is true, as urged by appellant, that the law indulges in a presumption that the former marriage between the parties has been dissolved; such presumption being founded upon the solemnization of the second marriage, which ceremony raises a presumption of its legality; but such presumption may be controverted by evidence that the former spouse is living and that neither a divorce nor an annulment of such former marriage was ever procured. In the instant case we are persuaded that the court was authorized under the evidence to find and conclude that the spouse to whom appellant was formerly married was actually living; that the prior marriage was not dissolved, and that appellant had knowledge of these facts on the occasion of the solemnization of her subsequent marriage to respondent. Such a conclusion finds evidentiary support in

the letters written by appellant some four years after the second marriage, in which communications she not only stated that her former spouse was living at the time she contracted the marriage to respondent, but that such former spouse had been in her life for years and was in possession of evidence regarding her past life upon the basis of which he extorted money from her as the price of his silence in regard thereto. Added to this is the testimony that appellant had written the county clerk of Mendocino County for information as to whether her husband by the former marriage had instituted an action against her for divorce. Furthermore, the trial court was confronted with testimony that appellant herself had filed an action for divorce against her former spouse in which she alleged his actual existence and the fact that he had continued to desert her since 1916.

So far as the provisions of subdivision 2 of section 61 of the Civil Code, of which appellant seeks to avail herself, are concerned, in connection with her claim that her second marriage is valid notwithstanding her former husband was alive and the former marriage had not been dissolved or annulled, it must be remembered that the element of good faith and honest belief on her part that her husband was dead is essential. Indeed, the statute so makes it. (*Wilcox* v. *Wilcox,* 171 Cal. 770, 776 [155 Pac. 95].) In the light of the evidence before it, the trial court was justified in concluding that the first marriage of appellant with Williams was never dissolved or annulled, and further, that appellant did not at the time of her marriage to respondent in good faith believe that her former husband was deceased. The credibility of the witnesses, as well as the weight and intrinsic value of the evidence presented, were all questions addressed to the trial court, whose decision therein cannot be disturbed by us unless we can say that the testimony upon which the trial judge relied was so inherently lacking in probability as to amount to no evidence at all. The testimony in the case at bar upon which the findings are predicated deserves no such stricture.

It is next contended by appellant that a decree annulling a marriage cannot be sustained when the same depends upon the uncorroborated statements of the parties to the action. Section 130 of the Civil Code provides that no *divorce* shall be granted upon the uncorroborated statement, admission or testimony of the parties. However, we see no warrant for holding that the provisions of section 130 apply to annulment actions.

██ Although it is sometimes said that the term "divorce" includes annulment actions, we are not in accord therewith because, strictly speaking, a divorce action has for its objective the dissolution of the bonds of a valid marriage by reason of something which occurs after the marriage, while an annulment proceeding is founded upon the theory that no valid marriage ever existed by reason of some cause which was present at the time of the marriage. The code section relied upon by appellant, we feel, is confined alone to divorce actions. Section 130 of the Civil Code is part of article III, chapter II, title I, part III of the Civil Code, which is an article entitled "Causes for Denying Divorce," whereas article I of chapter II is entitled "Nullity," and recites fully the requirements for the annulment of marriages for reasons existing at the time the contract of marriage was entered into. It seems to us very clear that the action for divorce referred to in section 130 contemplates the ordinary action for divorce and does not include proceedings for annulling a marriage, and is therefore not applicable thereto. The case of *Millar* v. *Millar*, 175 Cal. 797, 806 [167 Pac. 394, L. R. A. 1918B, 415], supports our view in this regard.

██ As a further ground of appeal, it is contended by appellant that the court erred in failing to make a finding upon a material issue in connection with appellant's contention at the trial that certain real and personal property was community property of the parties and should be divided equally between them. In this regard, it is conceded, and the record shows, that the trial court found that respondent was the owner as his sole and separate property of the real property in question, as well as the owner and entitled to the possession of an automobile and a certain policy of insurance. But it is urged by appellant that the court failed to make a finding upon the allegation that she was acting under undue influence practiced upon her by respondent when she deeded to him the real property which originally stood in their joint names. The court's finding that the property was the separate property of respondent amounted to a finding against appellant's claim of undue influence. As to the manner and means by which the property was acquired, the most that can be said of defendant's contention that she contributed toward the purchase price thereof is that the evidence in that regard was in conflict and the trial court, as it had the right to do, resolved that conflict against her. There is no evidence in

the record to substantiate appellant's claim that she was the victim of undue influence on the part of respondent prior to or at the time she executed the deeds to him. Even though we assume that the provisions of section 158 of the Civil Code are controlling in a case where the marriage is invalid, the facts and circumstances shown in the record here as to the conduct of plaintiff with defendant in connection with the transfer of defendant's property interest to him do not substantiate her claim of undue influence. It is therefore apparent that if more complete findings had been made on the issue of undue influence, they would have been adverse to the contentions of appellant. That being so, the failure of the court to find further than it did is not a ground for setting aside the judgment. (*Hulen* v. *Stuart*, 191 Cal. 562, 572 [217 Pac. 750] ; *County of Los Angeles* v. *Industrial Acc. Comm.*, 13 Cal. App. (2d) 69, 78 [56 P. (2d) 577].)

In answer to appellant's claim that the trial court was vested with jurisdiction to divide the property in an annulment proceeding, it may be said that the authorities seem clear in their holding that a void marriage vests no rights in either of the parties to it so far as the property of the other is concerned in like manner as the rights conferred by a valid marriage. However, the rule adopted by our courts seems to be that where a man and woman innocently enter into a marriage contract and innocently believe they are husband and wife, the property acquired by their joint efforts will be divided equally between them. (*Schneider* v. *Schneider*, 183 Cal. 335 [191 Pac. 533, 11 A. L. R. 1386].) Although we concede that the court had jurisdiction to divide the community property between the parties, nevertheless that jurisdiction did not make such action mandatory. Indeed, in the case at bar there is evidence warranting the conclusion on the part of the trial court that the property in question was not acquired through the joint efforts of the parties, but belonged solely to the respondent. Therefore the rule of equal division of such property cannot be invoked on appeal from a decree awarding the property under such circumstances to the party in whose name it stood.

For the foregoing reasons, the judgment is affirmed.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 6, 1942.