### DAVIS v. PEARCE.

#### No. 14873.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 24, 1947.

G. C. Harris and A. S. Rollins, both of Greenville, for appellant.

Mayo W. Neyland and J. Benton Morgan, both of Greenville, for appellee.

McDONALD, Chief Justice.

Appellant, as plaintiff in the court below, sued defendant for title and possession of a house and lot located in Greenville. The substance of plaintiff's claim is that he paid the purchase price, that title was taken in the name of defendant by virtue of an agreement made before the purchase that defendant would hold the property for plaintiff's benefit and would convey it to plaintiff upon his demand, and that, as a consequence, there arose a resulting trust in plaintiff's favor.

There appears in the statement of facts a stipulation to the effect that at the time of trial there was an outstanding lien against the property to secure a debt of $2600 owing to a third party, and that any judgment entered should be subject to such lien. It is not disputed that plaintiff paid the down payment, and that he also paid several hundred dollars on the debt against

the property. The conveyance names defendant as the grantee, and recites the assumption by defendant of the indebtedness against the property.

In a trial without a jury the court below rendered judgment in favor of defendant. He filed separate findings of fact and conclusions of law, which are in substance as follows: 1. On December 24, 1943, plaintiff purchased said property for the use and benefit of defendant. 2. Plaintiff intended to and did vest title in defendant. 3. The total consideration for the purchase of the property was approximately $3400. The down payment of $532.20 was made by plaintiff. 5. The property was encumbered with an indebtedness of approximately $2800, which was assumed by defendant. 6. Plaintiff, after the property was purchased, made payments on the indebtedness in approximately the amount of $440, said payments being made in accordance with an agreement and understanding between plaintiff and defendant that plaintiff would make the payments for her. 7. The deed was delivered to defendant and was duly recorded. 8. At no time was there any intention or agreement between plaintiff and defendant that defendant would convey the property to plaintiff when he should demand it. 9. The consideration which induced plaintiff to purchase the property for defendant was the following: (a) During the year 1933 plaintiff was a married man about 65 years of age and defendant was a widow about 25 years of age. She was the mother of three children, and was then living on one of plaintiff's farms. (b) During 1933 plaintiff began keeping company with, or having dates with, defendant and such relation continued between plaintiff and defendant for about twelve years, until a short time before the present suit was filed. (c) During the time of such relationship defendant drove plaintiff's automobile for him on business trips; she accompanied him to his various farms; she assisted him in keeping a record of his rents and subsidy payments from the Government; plaintiff spent a great deal of time in defendant's home; defendant mended, cleaned and pressed plaintiff's clothing; defendant nursed plaintiff during his illness; defendant cooked and prepared meals for plaintiff. 10. During the time plaintiff was keeping company with defendant he was extended sexual favors by defendant and as the result thereof she became pregnant and bore him two children.

The conclusions of law read as follows:

"In the absence of an intention or agreement of the parties hereto, as shown by the foregoing findings, that the property in question was to be conveyed to the plaintiff on his demand, I conclude, as a matter of law, no trust was created in the purchase of the property in controversy and that the plaintiff acquired no equitable lien upon said property for the payments he made on the same.

"The deed of conveyance to the above described property executed by Fred H. Lowe and wife, Aline Lowe, to the defendant, Opal Pearce, having been delivered to her by the plaintiff herein after its purchase, I conclude that title to the same effectually was vested in the defendant."

Plaintiff's appeal is based on five points of error. We shall discuss all of the contentions raised under them.

Plaintiff's claim of a resulting trust in the property is based on the fact that he paid the down payment and all that had been paid on the indebtedness against the property up to the time the present controversy arose. Clear statements of the rules governing resulting trusts of this kind are contained in Volume Two, Restatement of the Law of Trusts, beginning at page 1339. A resulting trust of this sort does not depend on an agreement of the parties. If there is an agreement of the parties that the property shall be held in trust, an express trust arises. See pages 1352, 1353. If the agreement of the parties is depended on to establish the trust, it must be a valid one under the Statute of Frauds. An oral agreement may be proved, not to create an express trust, but to negative the inference that the settlor intended that the conveyance should be for the benefit of the grantee, as, for instance, in case of a gift of the property. Thus, proof of an oral agreement that the property should be held in trust and that the grantee in the conveyance would convey it on demand, will

not establish an express trust, nor will the lack of such an agreement necessarily defeat the claim of a resulting trust. An example of a resulting trust is set out at page 1342:

"1. A purchases the land and pays the purchase price to the vendor and at his direction the vendor transfers the land to B. B holds upon a resulting trust."

The resulting trust is based on the inference that although A consented to the transaction, he did not intend that B should have a beneficial interest in the land. The general rule is stated on page 1343:

"Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid, except as stated in ## 441, 442 and 444."

The resulting trust arises even though the deed recites that the consideration was paid by the grantee named in the deed. Page 1345.

But, as above indicated, there are exceptions to the general rule. For instance, at page 1348 it is said:

"a. Manifestation of intention that transferee should have the beneficial interest. Where a transfer of property is made to one person and the purchase price is paid by another, the inference that a resulting trust was intended is rebutted if it appears that the payor intended that the transferee should have the beneficial interest in the property transferred. This is the case where it appears that the payor intended to make a gift of the property to the transferee (see # 447) or to make a loan of the purchase price to the transferee (see # 445). So also, no resulting trust arises where the purchase price was paid to discharge a debt or other obligation owed by the payor to the transferee (see # 446)."

In order to determine whether the one paying the consideration intended to make a gift of the property, or, to put it another way, in order to determine whether he did or did not intend that the property should be held for his benefit, the court may consider declarations made by him as to his intentions before, at the time of, or subsequent to, the time of the transfer of the property. Page 1348. Thus, his oral declarations are admissible to show that he intended that the transferee should have the beneficial interest in the property. As a resulting trust arises from parol evidence, so it may be rebutted by parol evidence. Pages 1348, 1349. The intentions of the payor may be shown not only by his declarations, but also by the circumstances under which the transfer was made. Id.

Before we undertake to apply the foregoing rules to the facts of this case, as found by the trial court, we first should consider the third point of error, which charges that the overwhelming weight of the evidence is against the finding of the court that there was no agreement between plaintiff and defendant that the latter would convey the property to plaintiff on his demand. As we have pointed out, the claim of a resulting trust does not depend on such an agreement. There could be a resulting trust without such an agreement, and, on the other hand, there could be cases where there would not be an enforcible trust, even though such an agreement had been made. If the facts as found by the trial court support the judgment, we will not reverse the judgment merely because it is based on an insufficient or erroneous reason. 3 Tex. Jur., p. 1008. As for the sufficiency of the evidence to support such a finding of fact, it is enough to say that defendant testified positively that there was no such agreement.

Next, we shall examine plaintiff's contention to the effect that defendant's testimony is unworthy of belief because by her own admission she engaged in a long-continued course of adulterous conduct with plaintiff. Among other things, plaintiff urges in his brief that four character witnesses testified as to his good reputation for truth and veracity. The comparison thus suggested as to the relative character of plaintiff and defendant does not appeal to us. We will follow the rule which requires us to leave the matter of credibility of the witnesses to the trial court.

The trial court found that defendant performed services for plaintiff which

induced plaintiff to purchase the property for her, that there was no intention on plaintiff's part that defendant would convey the property to him, and that plaintiff intended to and did vest title to the property in defendant. Plaintiff contends that defendant's testimony to such effect is against the overwhelming weight of the evidence, and is contrary to all human experience, and that defendant's pleadings and proof both show that her claim is based not on the rendition of lawful services, but on illegal and immoral sexual indulgences. As we see it the effect of such a contention on plaintiff's part would be to preclude him from a recovery in the suit. If he be correct in his contention that the evidence shows without dispute that the consideration for the whole transaction was the course of illegal and immoral conduct of defendant, then the conclusion which must follow is that plaintiff is seeking equitable relief from an illegal and immoral transaction to which he was a party, and in connection with which his guilt, unless we apply a double standard of morals to the conduct of the parties, is equal to that of defendant. In such a case the court usually will leave the parties where it finds them. The following pronouncement appears in Volume Two, Restatement of the Law of Trusts, § 444, page 1359:

"Where a transfer of property is made to one person and another pays the purchase price in order to accomplish an illegal purpose, a resulting trust does not arise if the policy against such unjust enrichment of the transferee is outweighed by the policy against giving relief to a person who has entered into an illegal transaction."

It is not necessary for us to hold here that plaintiff is precluded from claiming a resulting trust, under the rule just quoted, and we do not affirm the judgment on that ground, but if any rule of public policy should be applied in this case, it ought to be applied with equal force to both of the parties. If, as contended by plaintiff, the only consideration for the transfer of this property to defendant was the extension of illegal and immoral sexual favors to plaintiff, and, if as contended by plaintiff, defendant should be denied the right to defend her legal title on grounds of public policy, then it ought to be said, with more reason, that plaintiff should likewise be denied the right to seek relief in a court of equity.

In his brief plaintiff says that the money paid on the purchase price was community property of himself and his wife, and he suggests that it should be repugnant to the sense of justice of the court to sanction a proposition that a husband may desert his lawful wife and while living in adultery with another woman donate to the latter as a gift his wife's interest in the property owned by him and his wife in common. There is nothing in plaintiff's pleadings suggesting that the suit is brought on behalf of the wife to recover for a fraud perpetrated on her by her husband, the plaintiff. The matter is raised for the first time in his brief, on appeal. In support of the proposition plaintiff cites Watson v. Harris, 61 Tex.Civ.App. 263, 130 S.W. 237; Allen v. Brewster, Tex.Civ.App., 172 S.W. 2d 192, reversed by Supreme Court in case bearing the same style, 142 Tex. 127, 176 S.W.2d 311; and Krenz v. Strohmeir, Tex. Civ.App., 177 S.W. 178, writ refused. As we read those cases, they hold that, even though the gift by the husband be fraudulent as to the wife and subject to being set aside at the suit of the wife or her heirs, it is binding as to him and his heirs; and, also, it is said that the gift may be upheld if upon a proper accounting the wife or her heirs may receive her full share of the community out of other properties of the estate. In the case before us it is shown that plaintiff owns several farms. If it is his desire that his wife be reimbursed for the loss occasioned by his gift of community funds to defendant, it may be that he can repay her with funds derived from his interest in other community property. In any event, the pleadings do not present the issue which is raised for the first time in plaintiff's brief.

Finding no reversible error, we affirm the judgment of the trial court.