[No. 34043. Department One. May 16, 1957.]

BONNIE M. WEST, *Respondent and Cross-appellant,* v. DELMER L. KNOWLES, *Appellant.*[1]

[1]Reported in 311 P. (2d) 689.

*R. G. Schimanski,* for appellant.

*William C. Harrison,* for respondent and cross-appellant.

MALLERY, J.—The plaintiff, Bonnie M. West, and defendant, Delmer L. Knowles, lived in a meretricious rela-

tionship for ten years, during which time they held themselves out to the world as husband and wife.

In November, 1954, and June, 1955, they quarreled over their property. The defendant refused an accounting on both occasions. They separated in 1955, and this action was commenced to fix their property rights. Both parties have appealed from the property awards made by the trial court.

We find no merit in defendant's assignments of error directed to the court's findings of fact and conclusions of law, which are supported by the record.

Defendant makes the general contention that the court should have awarded the properties to the parties in whom the title stood at the commencement of the action, and that it erred in attempting to trace title to them from the time they were acquired.

He relies upon *Creasman v. Boyle*, 31 Wn. (2d) 345, 196 P. (2d) 835. It is not in point. As pointed out in *Iredell v. Iredell*, 49 Wn. (2d) 627, 305 P. (2d) 805, the *presumption* that the parties *intended* to dispose of their property, as the title thereto would indicate, arises only when there is an absence of evidence as to intention. In the *Creasman* case one party was dead and the other silenced by RCW 5.60.030 [*cf*. Rem. Rev. Stat., § 1211]. That case has been restricted in its application to its own particular facts.

The court was correct in tracing the property in the instant case, because both parties testified *in extenso* regarding their properties. None of the property ever lost its character as separate property, notwithstanding the mingling thereof, the resulting confusion, and the difficulty of separating it. No presumptions arise as to property which can be traced to one or the other. It belongs to the original owner, in the absence of an overt gift or contract regarding it. Property acquired with contributions from both parties is held as tenants in common, and courts will presume they intended to share the property, in proportion to the amount contributed, where it can be traced, otherwise they share it equally. *Iredell v. Iredell, supra*.

As to certain specific items of property, the defendant contends for an equal division of the joint savings

account in the Spokane Valley Savings and Loan Association, which stood in both their names. The plaintiff was able to trace the source of this account to her separate funds. The court was correct in not awarding defendant any of it.

The defendant contends the parties were tenants in common in the real estate known as the University street property, and that he should have an undivided one-half interest in it because it stood in both their names. Here again, plaintiff traced the acquisition of the property to her separate funds, which had been derived from the sale of her separate real estate in Othello, Washington, her own earnings, which, of course, were separate because no community existed, and her separate postal savings account. The court was correct in awarding her own separate property to her.

Defendant contends that the collection agency business, which the court awarded to him, should not have been encumbered in her favor in the amount of $151.50. The contention is without merit. The plaintiff traced that sum of money from her separate funds directly into the business and is, therefore, entitled to such an encumbrance.

The defendant contends the court erred in not awarding him the 1956 Volkswagon, power saw, lawn mower, garden tractor, hand tools, et cetera. His contention is without merit. He did not successfully trace the purchase price of these articles to his separate funds.

On her cross-appeal, plaintiff contends that she should have one half the value of defendant's collection agency business, because she had supported him while he built up his business. She did not successfully rebut the presumption that, while they lived as man and wife, her support of defendant was given and received as a gratuity. The same ruling applies to her contention that the court erred in not awarding her judgment for moneys spent in supporting defendant for the last three years they lived together.

The plaintiff contends the court erred in failing to grant her judgment for four hundred dollars expended in medical bills on account of a nervous breakdown caused by

the parties quarreling over their property. The contention is without merit. The quarreling was incident to a meretricious relationship, and is covered by the rule of *damnum absque injuria*.

■ Neither party contends there was a business partnership between them. In meretricious relationship cases, the court will award the properties before it to the party determined to be the owner thereof. It will not go back to the beginning of the relationship and take an accounting of the earnings and disbursements as if a trust relationship existed.

We therefore find no merit in plaintiff's contentions that the court erred in not awarding her a judgment (1) for the proceeds of the sale of real estate located in Othello, which were traced into subsequent accounts; (2) for $1,700 on account of rentals on that property collected by defendant before its sale and which he was not shown to still possess; (3) for one half the sale price of $600 for a Willys automobile, which the defendant received and spent; (4) and for $2,750 that was in the Old National Bank of Spokane joint savings account, which was withdrawn and spent.

The judgment is affirmed. Neither party will recover costs.

HILL, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.

FINLEY, J. (concurring specially)—Considering the facts and circumstances involved, I believe that the majority opinion authorizes a fair and equitable, and altogether proper, disposition of the property as to which the litigants assert an interest or claims of ownership. It is because of this, and not so much for the reasons stated by the majority, that I have signed the opinion.

The majority opinion indicates that for ten years Bonnie West and Delmer Knowles lived together and were generally accepted as a married couple. However, they had never observed the usual conventions of (a) obtaining a marriage license and (b) formally exchanging marriage vows. Obviously, such a relationship is not generally ap-

proved by the mores of our society. It is not a relationship which is encouraged by the courts. Be that as it may, some of our citizens of the opposite sex occasionally become involved in a relationship such as that in the instant case.

Not infrequently, through the individual or joint efforts of the parties, such a couple acquires or accumulates property. Friction develops, the parties quarrel, and finally they terminate the unconventional or so-called meretricious relationship. Thereupon, a decided difference of opinion arises between them as to the ownership of certain items of property. Occasionally, the parties bring their dispute to the courts, seeking an authoritative settlement. Under such circumstances, this court and the courts of other jurisdictions have, in effect, sometimes said, "We will wash our hands of such disputes. The parties should and must be left to their own devices, just where they find themselves." To me, such pronouncements seem overly fastidious and a bit fatuous. They are unrealistic and, among other things, ignore the fact that an unannounced (but nevertheless effective and binding) rule of law is inherent in any such terminal statments by a court of law.

The unannounced but inherent rule is simply that the party who has title, or in some instances who is in possession, will enjoy the rights of ownership of the property concerned. The rule often operates to the great advantage of the cunning and the shrewd, who wind up with possession of the property, or title to it in their names, at the end of a so-called meretricious relationship. So, although the courts proclaim that they will have nothing to do with such matters, the proclamation in itself establishes, as to the parties involved, an effective and binding rule of law which tends to operate purely by accident or perhaps by reason of the cunning, anticipatory designs of just one of the parties.

This court, and those in other jurisdictions, often have made exceptions to the foregoing judicial *modus operandi*. In such instances, divisions of property have been made on the basis of one or more legal theories or concepts such as (a) resulting trust, (b) constructive trust, (c) quasi con-

tract, (d) implied contract, (e) fraud, (f) intention of the parties, (g) joint tenancy or tenancy in common coupled with an equitable rather than an equal partitioning. See Annotation 31 A. L. R. (2d) 1250, *et seq.*; also, *Buckley v Buckley,* 50 Wash. 213, 96 Pac. 1079; and *Poole v. Schrichte,* 39 Wn. (2d) 558, 236 P. (2d) 1044.

In *Poole v. Schrichte, supra,* the court made a statement off the norm, saying:

"The evidence establishes here a joint venture if not a partnership between the parties so far as their interests in the tavern are concerned. Their social relationships, legal or illegal, moral or immoral, are not material on this phase of the case. . . .

"We agree with Judge Rudkin in his concurring opinion in *Buckley v. Buckley, supra,* that the authority and jurisdiction of the court to divide the property accumulated during such a relationship is in consequence of the court's inherent equity power, and not because of the divorce statute. It is likewise our view that the court is not limited, under an equal partnership concept, to an even division of the property accumulated, but that the innocent party may be awarded such proportion of the property accumulated as would under all the circumstances be just and equitable."

And in *Caldwell v. Odisio,* 142 Cal. App. (2d) 732, 299 P. (2d) 14, the California court said:

"The respective claims of the parties to property are only those which derive validity from principles of equity and justice. Those principles do not permit one of the parties to keep all the property that has been acquired through the joint efforts of both. There must be a fair division. (*Goff v. Goff,* 52 Cal. App. 2d 23 [125 P. 2d 848]; *Sancha v. Arnold,* 114 Cal. App. 2d 772 [251 P. 2d 67, 252 P. 2d 55] *Coats v. Coats, supra,* 160 Cal. 671; *Feig v. Bank of Italy, supra,* 218 Cal. 54; *Sanguinetti v. Sanguinetti,* 9 Cal. 2d 95 [69 P. 2d 845, 111 A. L. R. 342]; *Santos v. Santos, supra,* 32 Cal. App. 2d 62.)

" . . .

"As a general rule, in the division of property the courts have used as a fair basis the principles of the community property system and the property has been divided as in the cases of valid marriages. . . .

"It is inherent in the arguments of respondents that the parties to an invalid marriage have the same rights in the

accumulated property as are enjoyed by the parties to a valid marriage. In this they are mistaken. The latter are statutory and in some instances inflexible, whereas in the former, the respective claims are recognized only to the extent that they are seen to be just and fair."

In *Creasman v. Boyle*, 31 Wn. (2d) 345, 196 P. (2d) 835, this court was confronted with the problem of disposing of property acquired over a period of several years by a negro man and a Caucasian woman who lived together as husband and wife for a number of years in a community of this state. The woman died at a time when most of the property acquired through the efforts of the couple was in her name. A dispute as to the ownership of the property found its way into court. The dispute was between the surviving negro man and the deceased woman's adult married daughters, who were offspring of an early marriage between the deceased woman and a Caucasian man.

In the *Creasman* case, a closely divided court declined to apply the *resulting trust* doctrine and stated, in effect, that the court would wash its hands of the problem, and that the property involved would go to the surviving daughters of the deceased woman because title stood in her name at the time of her death. The case is criticized in 27 Texas L. Rev. 725 (1948-1949), as follows:

"Plaintiff, a negro, cohabited for seven years with a white woman, who managed their financial affairs. On her death most of the property was in her name, although a substantial portion was attributable to plaintiff's wages. In the trial court, plaintiff was awarded a judgment against the administrator of his deceased partner's estate for one-half of the property acquired during their illicit relation. Plaintiff and defendant both appealed, plaintiff claiming all of the property on the theory of a resulting trust. *Held,* where the parties are aware of the illegal character of their relationship, the court will aid neither and the property will belong to the one in whose name it is found. *Creasman v. Boyle,* 196 P. 2d 835 (Wash. Sup. 1948).

"  .  .  .

"In rejecting the possibility of a resulting trust in the principal case, the court emphasized the intention of the parties. Express intention need not be shown when the

intention to create a resulting trust can be established from the surrounding circumstances. See *Davis v. Pearce,* 205 S. W. 2d 653 (Tex. Civ. App. 1947); RESTATEMENT, TRUSTS § 441 (1935). In recognizing this doctrine and stating that there would be no resulting trust if the payor intended that the transferee should retain the beneficial interest, the instant court seems to have considered only two possibilities: (1) that the payor intended that he should retain the beneficial interest, or (2) that the payor intended that the transferee should retain the beneficial interest. This view overlooks a third, and perhaps more probable, possibility in this type of case that the payor intended that he and the transferee should share the beneficial interest. As pointed out by the dissent in the principal case, it does not seem logical that the plaintiff intended that the heirs of his 'wife' should take the property to the exclusion of himself.

"In all such cases allowing relief to one party against the estate of the other, the woman was permitted recovery from the man's estate, and persons of the same race were involved. While theoretically these differences should not change the result, nevertheless, they may have influenced the Washington court to reach the seemingly harsh result of the principal case."

I think *Creasman v. Boyle, supra,* is an outstanding example of what can happen when too much emphasis is placed upon an abstract legal concept, transplanted to strange surroundings in a different field of the law from its usual or native *habitat.* I would certainly prefer a more straightforward and realistic appraisal and handling of such domestic relations property problems. This viewpoint is supported by what we said in *Poole v. Schrichte, supra,* quoted above, and by the early decision of this court in *Buckley v. Buckley, supra.* (See particularly the reasoning of the concurring opinion by Judge Rudkin.) In the *Buckley* case, the majority stated, among other things, that in a timely suit for partitioning, or in any other appropriate action, the property of the parties should be disposed of as in a divorce proceeding under the divorce statutes of this state. As to this, Judge Rudkin, in his concurring opinion, stated:

"I concur in the judgment of affirmance but not in the application of Bal. Code, § 5723 (P.C. § 4637), to the an-

nulment proceedings of Mary Buckley against Andrew Buckley. Between these parties there was no marriage, and their property should be divided or distributed according to the rules governing the division or distribution of the joint accumulations of any other persons between whom no marriage exists. As applicable to such a proceeding, I approve the rule announced in the authorities cited in the majority opinion; viz., that the court may restore to the woman any property the man may have acquired by or through her, may compensate the woman for any pecuniary benefits derived by the man during the existence of such relation, or may make a just and equitable distribution of their joint accumulations. But this is very different from the power exercised by the court under § 5723. Under that section the court considers not only the party through whom the property was acquired, but also the merits of the parties and the condition they will be left in by the divorce. It not only considers the past but provides for the future as well. It may, and generally does, provide for the future maintenance and support of the wife, by general alimony or by an award of property, especially where the husband is at fault. None of these considerations enter into a decree of nullity. In the one case the property is simply distributed to those who have aided and assisted in its acquisition. In the other case the court exercises a broader discretion, distributes the property according to different rules, and adjusts the rights, duties, and obligations growing out of the marriage relation. It seems to me that even a superficial reading of this section would convince one that a valid subsisting marriage lies at its very foundation. I believe, however, that the division made by the lower court was equitable and just under all the circumstances, without any regard whatever to § 5723, and that its judgment should be affirmed."

I am convinced that courts exist—and that it is their function—to settle disputes between citizens by peaceful means, and to obviate resort to selfhelp and violence wherever this can be done consistently with sound public policy. In the furtherance of justice for all concerned, I think that the property of parties to a so-called meretricious relationship can and should be distributed on a fair and equitable basis. I do not mean to imply by this that in such situations the courts are required to make a meticulous and detailed accounting of every stick of furniture acquired, and of

every sou that may have been earned by one or the other of the parties. A fair and equitable distribution of property does not imply an accounting operation with the precision and delicacy of a surgeon's scalpel. It merely connotes a reasonable and rough approximation and appraisal of earnings and other factors, and a division of property that will in a general way be reasonable, fair, and equitable by the standards of just, tolerant, and understanding individuals.

[1]Reported in 311 P. (2d) 673.